Suzanne L. **MAGNANT**, Administrator Indiana Department of Public Welfare, Indiana Department of Public Welfare, and Blue Cross and Blue Shield of Indiana, Appellants (Defendants),

v.

**AMBULATORY RENAL SERVICES, INC.**, Appellee (Plaintiff).

No. 49A04–9002–CV–77 [1].

Court of Appeals of Indiana, Second District.

Aug. 5, 1991.

---

1. This case was assigned to this office on January 2, 1991.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellants.

Randall R. Fearnow, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant the Indiana Department of Public Welfare (the Department) appeals from the trial court's injunction enjoining the Department from suspending Medicaid payments to plaintiff-appellee Ambulatory Renal Services, Inc. (ARS), claiming ARS should have exhausted its administrative remedies.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that ARS is an Indiana corporation organized on March 17, 1989. ARS is the successor entity to Am-

bulatory Renal Services, a sole proprietorship owned by Dennis Lennartz (Lennartz), who was the original President and sole shareholder of ARS when it was incorporated. Lennartz, in 1982, as owner of the predecessor of ARS, entered into a provider agreement with defendant Blue Cross and Blue Shield of Indiana (Blue Cross) to provide services to the Department as a Medicaid provider. Blue Cross is an agent of the Department and acts as the Department's fiscal intermediary with Medicaid providers. ARS transported Medicaid eligible renal dialysis patients to and from necessary dialysis treatments.

The Department, acting through local county welfare departments, issued prior authorization for Medicaid recipients seeking to be transported to dialysis treatment. These authorizations included an approval of the service sought as well as approval of the provider whom the recipient chose to provide the service. The prior authorizations were delivered to ARS by the Department in some counties, and given to recipients to give to ARS in other counties. ARS operated in thirty-two Indiana counties and employed thirty-four drivers. ARS was the only provider of transportation services in sixteen of the counties in which it operated. The transportation of indigent Medicaid recipients constituted 100% of ARS's business, and ARS received no private funds for any of the services it provided.

On April 27, 1989, a month after ARS was incorporated, Lennartz was indicted by a federal grand jury and charged with nineteen counts of mail fraud and one count of filing a false Medicaid claim. The incidents allegedly occurred in 1986 and 1987.

Five months later, without intervening official action of any kind, in September, 1989, the Department stopped paying ARS for services for which ARS had obtained prior authorization to perform. The Department began withholding payments due to ARS for a four week period in August and September. The Department gave ARS no notice that it would withhold payments, and the Department continued to provide prior authorization of services during the four week period. After various contacts, Lennartz was able to discover that the Department had informally decided to withhold payments due to ARS pending Lennartz's trial on the federal indictments.

On September 21, 1989, ARS filed suit alleging the Department owed it more than $45,000 and sought a temporary restraining order to prevent the Department from withholding payments to ARS. The trial court granted the restraining order and set a hearing for September 27, 1989. After that hearing, the trial court amended the restraining order and allowed the Department to initiate an administrative proceeding against ARS. On September 29, 1989, the Department notified Lennartz that it would be withholding payments to ARS for an indeterminate time. On October 3, 1989, Lennartz requested an administrative hearing. The Department never scheduled a hearing.

On November 9, 1989 Lennartz transferred 49.8% of ARS's stock to several irrevocable trusts for his three children, with his wife acting as trustee. On November 14, 1989, Lennartz sold the remaining 50.2% of ARS's stock to Kevin Harris (Harris), and Harris agreed to pay Lennartz $5000 per month for twenty months for the stock. Lennartz resigned as ARS's president and director of operations and Harris became ARS's president.

That same day, a bench trial was conducted on ARS's request for an injunction. Previously, ARS had posted a bond for $46,000 to protect the Department from any losses it might incur until a final Department action had been taken. Lennartz testified about ARS's financial status, its various monthly obligations, such as payroll, insurance, rent and other expenses, and said that ARS would be unable to operate more than four days without payment from the Department.

The trial court concluded that the Department was estopped from withholding payments to ARS for the provision of services for which the Department had issued prior approval. The trial court decided that withholding payments for claims for which

the Department had issued prior authorization denied ARS procedural due process. The trial court's order provided:

"IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED BY THE COURT that the defendants are permanently enjoined from suspending, or in any other way ordering the withholding or in any way delaying payment of funds due and owing the plaintiff pursuant to its provider agreement with the defendants and for its performing of services for Medicaid payments *for which the defendants have given prior authorization.* This Injunction shall remain in full force and effect until such time as any administrative hearing is held and a final order of the agency is entered. Defendants are furthermore ordered to bring current any and all claims heretofore submitted by the plaintiff instanter and the defendant's Motions to Dismiss are hereby denied."

*Record* at 242 (emphasis supplied).

### ISSUE

Whether ARS should have exhausted its administrative remedies?

PARTIES' CONTENTIONS—The Department asserts that the trial court should have dismissed ARS's action because it had not exhausted its administrative remedies. The Department also argues that ARS had no right to participate in the Medicaid program and that the trial court's action interfered with the Department's administrative process. ARS responds that they merely sought payment for services which the Department had issued prior authorization, and that the Department should be estopped from withholding payment for pre-approved services.

CONCLUSION—The trial court properly enjoined the Department.

This is a case of first impression for an Indiana court. The crux of the issue before us is the effect the Department's prior authorization has on a Medicaid provider's claim for reimbursement.

Medicaid is a jointly funded federal-state program established under Title XIX of the Social Security Act, § 1901, *et seq.*, 42 U.S.C. § 1396, *et seq.*, (1982), under which program health care providers are entitled to reimbursement for medical services rendered to eligible recipients. *Mote v. State Farm Mut. Auto. Ins. Co.* (1990), Ind.App., 550 N.E.2d 1354, *trans. denied.*

The Department correctly points out that Medicaid was not enacted for the benefit of health care providers and that providers have no property interest in their continuing eligibility as providers. *See St. Joseph Hospital v. Electronic Data Systems* (S.D.Tex.1983), 573 F.Supp. 443; *Indiana Dept. of Pub. Welfare v. Bair* (1984), Ind. App., 463 N.E.2d 1388, *trans. denied.* However, ARS does not assert any property interest in its status as a provider, and the trial court did not enjoin the Department from suspending ARS's provider status. Further, none of the cases the Department cites in support of its contentions considered claims for which prior authorization had been issued.

While reimbursement to Medicaid providers is not automatic, and each submitted claim must be reviewed by the Department to determine whether the services for which reimbursement is requested were medically reasonable and necessary, *see Indiana State Dept. of Pub. Welfare v. Stagner* (1980), Ind.App., 410 N.E.2d 1348, Medicaid providers seeking payment for services rendered may not be denied payment without due process of law. At a minimum due process requires notice and an opportunity to be heard. *Hearing and Speech Clinic of Evansville, Inc. v. Ind. Dept. of Welfare* (1984), Ind.App., 466 N.E.2d 462.

When the Department issues prior authorization, its review of a claim's medical reasonableness and necessity occurs before the claim is submitted. 470 IAC 5–8–3(c). All of the claims for which the Department suspended payment had the Department's prior authorization. *Record* at 334–36.

Prior authorization per se is not a blank check to Medicaid providers. 470 IAC 5–8–3(a) limits that prior authorization to authorization for payment of only Medicaid allowable charges and is not an

authorization of the provider's estimated fee. 470 IAC 5–8–3(d) also says:

"Notwithstanding any prior authorization by the department, the provision of all services and supplies shall comply with the provider agreement, the appropriate provider manual applicable at the time such service or supplies were provided, all other Medicaid policy documents issued to providers, and any applicable state or federal statute or regulation."

■ The Department argues that prior authorization does not induce providers to render services because the authorization is issued to recipients. The record, however, does not support the Department's position. The prior authorization form issued by the Department requires the submission of the "Requesting Practitioner Provider #," *record* at 300, and Lennartz testified that in some counties, the local welfare department would give the authorization to ARS directly. *Record* at 343–44.

470 IAC 5–8–17(b)(2)(B) has other language relating to transportation services; the "recipient, *or a party acting on the recipient's behalf,* must make the request" for prior authorization. (Emphasis supplied). There is nothing in the regulation which suggests a provider may not act on behalf of the recipient. 470 IAC 5–8–3(c)(1)(E) requires that the name of the suggested provider of services be submitted before prior authorization is issued. So, there is no merit to the Department's contention that prior authorization does not induce providers to provide services; the particular provider is authorized along with the requested service.

Our research has uncovered only one case in which a state welfare agency sought to withhold payment from a provider after issuing prior authorization for the service. In *Society of New York Hosp. v. Mogensen* (1971), 65 Misc.2d 515, 319 N.Y.S.2d 258, *rev'd on other grounds* (1972) 83 Misc.2d 840, 373 N.Y.S.2d 722, the court concluded: "The department's own actions in approving the recipient and his wife for medicaid *estop* it from asserting any defense or defenses *which merely seek*

*to delay final adjudication." Id.* at 519, 319 N.Y.S.2d at 262 (emphasis supplied).

In *Mogensen,* a hospital sought payment for a claim that was submitted late because the recipient did not inform the hospital that the Department of Social Services had issued prior authorization for his hospital stay. The court observed that the hospital's claim was for less than the amount the department would pay under its own schedule of payments for similar services, and ordered the department to pay the hospital.

■ *Mogensen* persuades us that a state welfare agency should be estopped from asserting any defense *which merely seeks to delay final payment* of a Medicaid claim when the claim has received prior authorization.

■ The elements of estoppel are: (1) a representation or concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it to his detriment. *Hosford v. Johnson* (1881), 74 Ind. 479; *Bogigian v. Bogigian* (1990), Ind.App., 551 N.E.2d 1149; *Glaser v. Dept. of Pub. Welfare* (1987), Ind.App., 512 N.E.2d 1128, *trans. denied.*

ARS has established each of the necessary elements: The Department concealed from ARS that it would withhold payments for the service provided by ARS while the Department, through its agent, issued prior authorization for the service; the Department was aware of the stated reasons for the withholding five months prior to the withholding and the Department continued to issue prior authorization to ARS during the four-week period after it had decided to withhold payment to ARS; ARS was not notified that payments would be withheld; the prior authorization was issued with the intent that ARS provide the requested service; and ARS provided the service to eligible Medicaid recipients. *See Central Ind. Carpenters Welfare Fund v. Ellis* (1980),

Ind.App., 412 N.E.2d 865. Succinctly stated, the Department has led ARS down the "primrose path." [2]

■ Ordinarily, equitable estoppel is not applied against government entities. *City of Crown Point v. Lake County* (1987), Ind., 510 N.E.2d 684; *Abner v. State* (1985), Ind., 479 N.E.2d 1254. However, when the necessary elements are present, as when an inconsistent position has been taken by the State, estoppel can apply to government agencies. *State ex rel. Agan v. Hendricks Superior Court* (1968), 250 Ind. 675, 235 N.E.2d 458.

The Department argues that estoppel should not apply here because: "Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to qualify for the benefits under the relevant statutes and regulations." *Glaser, supra* at 1131 *quoting Gressley v. California* (7th Cir.1979), 609 F.2d 1265 at 1267. However, the Department did not maintain that any of the prior authorizations issued for ARS's claims were mistakenly given or improper. And, the Department made no claim or allegation that ARS was not qualified to receive reimbursement for any of the claims for which the Department withheld payment or that any of the claims were improper. As the issuance of prior authorization by the Department and the withholding of payments were official actions of the Department, we conclude estoppel is applicable under the present circumstances.

■ Having decided that the Department is estopped from asserting any defense which merely seeks to delay the final adjudication of ARS's claim, it follows that the Department is estopped from asserting that ARS should have exhausted its administrative remedies. *See In re Ordinance No. 464 of Common Council of Jasper* (1962) 242 Ind. 475, 179 N.E.2d 749 (party may be estopped to assert a right to relief to which it otherwise would have been entitled). We reach this conclusion because the reason given to ARS for its suspension,

Lennartz's pending federal fraud trial, bore no relationship whatsoever to any of the claims for which the Department withheld payment. As the Department made no argument that any of withheld payments arose from any claims that were deficient in any way, the "administrative remedy" the Department sought ARS to exhaust was merely a delay. The Department did not claim that any of the claims submitted by ARS were fraudulent or improper. While the reason stated by the Department would have been sufficient to suspend ARS's *status* as a provider, and would have justified the withholding of prior authorization, the Department did not seek to take such action.

We emphasize that our decision is quite narrow: the Department cannot withhold payment for a claim which has been issued prior authorization unless the reason for the withholding bears some reasonable relationship to the claim for which payment is being withheld. This seems to be both fair and not unduly burdensome. Equity still inhabits the law. *State ex rel. Uebelhor v. Armstrong* (1969), 252 Ind. 351, 248 N.E.2d 32. Equity will not suffer a wrong without a remedy. *King v. City of Bloomington* (1959), 239 Ind. 548, 159 N.E.2d 563. If the Department has concerns about a provider, it should stop *asking* the provider to provide service in order to halt payments to the provider. Withholding a payment for a claim for a service which has expressly been approved, for a reason unrelated to the individual claim, is not equitable.

It is true the Department has latitude in determining whether a claim should be denied. *See* 470 IAC 5–1–3.5 However, each of the reasons listed in that regulation have a common thread: they all are directly related to the claim being denied. Because the Department made no claim that *any* of the claims for which it withheld payment were fraudulent or in any other way improper, the trial court correctly determined the Department's withholding payment for these particular claims was arbitrary and capricious.

---

**2.** W. Shakespeare, *Hamlet,* Act 1, sc. 3.

There is no substance to the Department's argument that the trial court impermissibly interfered with its administrative functions. In fact the trial court's limited injunction enjoined no other administrative activity, but merely prevented the Department from withholding payments for claims for which it had issued prior authorization and directed that the injunction be dissolved when proper administrative procedures were followed.

All in all this record indicates that the trial court discerningly rectified a legal wrong done to ARS by the Department.

Judgment affirmed.

CONOVER, and ROBERTSON, JJ. concur.