**Ruth THIE, Appellant–Plaintiff,**

v.

**Katherine L. DAVIS, in her official capacity as Secretary of the Indiana Family and Social Services Administration, Kathleen D. Gifford, in her official capacity as Assistant Secretary of the Indiana Office of Medicaid Policy and Planning, and Indiana Family and Social Services Administration, Appellee–Defendants.**

No. 49A02–9609–CV–574.

Court of Appeals of Indiana.

Oct. 30, 1997.

Kenneth J. Falk, Jacquelyn Bowie, Indianapolis, for Appellant–Plaintiff.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

## OPINION

KIRSCH, Judge.

Medicaid recipient Ruth Thie appeals[1] an adverse summary judgment concerning her request for Medicaid coverage. She presents two issues, which we restate as:

I. Whether the Indiana Medicaid regulation excluding coverage for dentures violates federal Medicaid law.

II. Whether the Indiana Medicaid regulation excluding coverage for dentures violates state Medicaid law.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Indiana participates in the federal Medicaid program, a service that provides financial assistance to cover necessary medical services for individuals whose resources are insufficient to pay for those services. Medicaid is a joint federal-state effort: federal funds help pay for state programs. To receive federal funding, the states must comply with the federal Medicaid statutes and regulations. *See* 42 U.S.C. §§ 1396–1396u (West 1997). Prior to 1995 the State program covered dentures, but in 1995 the State amended its coverage regulations to exclude dentures from dental service coverage.[2]

Appellant Ruth Thie is eligible for Indiana's Medicaid program. She is edentulous, meaning that she has no natural teeth. Lacking the financial resources to pay for dentures, she asked her dentist to make dentures for her and to bill the cost to Medicaid. Her dentist declined, because the Indiana Medicaid program does not cover dentures.

Thie then filed a complaint against the State Medicaid administration in Marion Superior Court, asking the court to hold the 1995 regulatory amendments invalid. Both Thie and the State filed summary judgment motions. In support of her motion, Thie submitted affidavits from two dentists, stating that dentures are medically necessary for endentulous people. The trial court concluded that neither the federal nor the state Medicaid laws require the State program to cover all medically necessary treatment or equipment. Accordingly, the court upheld the regulatory amendments and granted summary judgment for the State.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing a summary judgment, this court applies the standard used in the trial court. *Selleck v. Westfield Ins. Co.*, 617 N.E.2d 968, 970 (Ind.Ct.App.1993), *trans. denied.* Summary judgment is appropriate when there are no material factual issues related to the summary judgment motion. Ind.Trial Rule 56(C); *Indiana Dep't of Pub. Welfare v. Murphy*, 608 N.E.2d 1000, 1002 (Ind.Ct.App.1993). Here, there are no material facts in dispute, so one of the parties is entitled to judgment as a matter of law.

### II. Federal Medicaid Law

Recent cutbacks in state Medicaid coverage have sparked litigation concerning the scope of the State's authority to limit or exclude various treatments from coverage. The controversy has broad analytical roots that span concepts of federalism and statutory interpretation. From these roots, we must identify the standard for assessing the validity of Indiana's Medicaid coverage regulations; in particular, we must determine whether the Medicaid Administration's decision not to pay for dentures is valid.

---

**1.** This appeal was consolidated for oral argument with two other appeals: *Davis, et al. v. Schrader*, No. 49A02–9602–CV–87 and *Coleman v. Indiana Family and Social Services Administration*, No. 49A02–9609–CV–608. Although the legal issues in each appeal are analogous, we issue a separate opinion for each appeal due to the factual differences among them.

**2.** The former regulation stated that "Medicaid reimbursement is available for complete prosthodontics [dentures] and is limited to one (1) set per recipient every ten (10) years." 405 IAC 1–6–8(q)(5) (1995 Supp.). The amendment deleted coverage for dentures. 405 IAC 1–6–8 (1997 Supp.). *See also* 18 Ind.Reg. 11 at 2761–67 (1995) (redlined version of amendments).

The structure of the Medicaid program results in two tensions which underlie all Medicaid coverage issues. The first is state autonomy versus national uniformity or to what extent states should be permitted to determine the coverage which they will provide resulting in the potential for wide variations among the states in providing health care to indigent patients. The second is fiscal reasonableness versus medical reasonableness or the extent to which financial considerations impact the determination of medical necessity. Both tensions are present here.

The State contends that the federal Medicaid laws give the State authority to determine which items and treatments the State program will cover and allow the State to design an operational and fiscal hierarchy which excludes coverage for treatments outside that hierarchy. The State relies in part on the distinction made in the federal Medicaid statute between mandatory and optional service categories. States must cover certain medical services identified by the federal statute as mandatory; states may also cover other medical services.[3]

Dental coverage is an optional service category. Indiana has chosen to provide dental coverage, but to exclude dentures from that coverage. *See* IC 12–15–5–1(8); 405 IAC 1–7–28 (1997 Supp.). The State contends that its decision to exclude dentures from dental coverage is a reasonable exercise of the discretion afforded the states by the federal Medicaid statute.

Thie disagrees, maintaining that the State's exclusion of dentures is unreasonable. Thie argues that in optional service categories like dental coverage, the State must, upon determining to provide services within such category, cover all medically necessary treatments within that category. Thie contends that the regulation excluding dentures is invalid because it operates to exclude a treatment that is, for her, medically necessary.

The starting point for resolution of the parties' dispute is the federal law governing Medicaid coverage. The law is comprised of a statute and a regulation. The statute identifies the purpose of federal Medicaid appropriations to the states, and the regulation defines the manner in which the states must fulfill that purpose. The statute says that federal Medicaid appropriations are designed to enable

"each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of ... individuals ... whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such ... individuals ... attain or retain capability for independence or self-care."

42 U.S.C. § 1396. The regulation defines, in general terms, the requisite scope of state Medicaid plans:

"(b) Each service must be sufficient in amount, duration and scope to reasonably achieve its purpose.

. . . .

(d) The [state Medicaid] agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."

42 C.F.R. § 440.230(b), (d).

Not surprisingly, the parties support their respective arguments by highlighting different portions of the statute and the regulation. The State focuses on the portion of the statute which proclaims that states shall provide medical assistance "as far as practicable under the conditions in such State" and on the portion of the regulation authorizing states to limit services based on "utilization control." Based on these phrases, the State argues that it can and must exercise discretion in selecting the treatments to be covered within the dental service category. The State further argues that if the federal law required coverage of all treatments within optional service categories, the states might decline to offer optional services at all, to

---

**3.** The mandatory coverage areas are inpatient hospital services, outpatient hospital services, laboratory and X-ray services, nursing facility services, diagnostic and family planning services, and physician services (including nurse-midwife and nurse practitioner services). 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(1)–(5), (17), (21) (West 1997).

avoid the cost of covering every treatment a health care provider deemed necessary. Thie concedes that the State has discretion to limit Medicaid coverage, but insists that the discretion does not extend to excluding medically necessary treatment.

Two legal questions are apparent from the parties' arguments: (1) must Indiana's Medicaid program cover medically necessary treatments? and (2) if Indiana must cover medically necessary treatments, who determines which treatments are medically necessary? Both questions demonstrate the operation of federalism principles in the Medicaid Act, by requiring consideration of the division of authority between the states and the federal government.

With regard to the first question, the authority rests solely in the federal government. As the cases Thie relies upon demonstrate, the federal law indicates that state Medicaid programs must cover all medically necessary services. This conclusion is apparent in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). In *Beal*, the Court indicated that a state may refuse coverage for unnecessary medical treatments but must cover necessary treatments. The Court in *Beal* was analyzing a state regulation that excluded nontherapeutic abortions from Medicaid coverage, but its explanation of the Medicaid Act was not limited to any particular treatment or service category. In holding the regulation valid, the Court explained the Medicaid Act in a manner directly applicable to the issue presented in this case:

> "[the] regulation comports fully with [the federal Medicaid Act's] broadly stated primary objective to enable each State, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services.... *Although serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage*, it is hardly inconsistent with the

objectives of the Act for a State to refuse to fund unnecessary though perhaps desirable medical services."

432 U.S. at 445, 97 S.Ct. at 2371 (emphasis added).

The State argues that the above-quoted Supreme Court interpretation of the Medicaid statute was an "off-hand digression." *Appellant's Brief* at 13. We disagree. The *Beal* opinion rests on the unstated premise that Medicaid programs *must* cover medically necessary treatments. Both the majority opinion and the dissent are based upon this premise; they diverge on the question of whether nontherapeutic abortions are medically necessary. *See* 432 U.S. at 449, 97 S.Ct. at 2373 (Brennan, J., dissenting based on determination that nontherapeutic (elective) abortions are medically necessary).

Two other federal court opinions expand upon this premise. In *Rush v. Parham*, 625 F.2d 1150 (5th Cir.1980), the court noted that "the basis for finding that a state program must pay for all medically necessary services is that the appropriations section of the Medicaid statute states that the purpose of the Medicaid program is to enable each state to furnish medical assistance to [individuals] whose income and resources are insufficient to meet the cost of *necessary medical services*." 625 F.2d at 1155, n. 9 (quoting 42 U.S.C. § 1396) (emphasis added).[4] Similarly, in *Allen v. Mansour*, 681 F.Supp. 1232 (E.D.Mich.1986), the court cited the Medicaid statute and accompanying regulations, along with *Beal*, to support its conclusion that "the medical necessity of the procedure is the touchstone for evaluating the reasonableness of the standards in state Medicaid plans." 681 F.Supp. at 1237 (invalidating state refusal to cover liver transplant until recipient had abstained from alcohol for two years).

■ These cases indicate that the federal Medicaid Act requires coverage of medically necessary treatment. The controlling federal regulation confirms this conclusion. The regulation requires that coverage in each service category be "sufficient in amount,

---

4. The *Rush* court further noted that despite the Supreme Court's indications in *Beal*, some federal courts have held that state Medicaid programs may limit coverage of medically necessary treat-ments. 652 F.2d at 1155. The *Rush* court assumed, without deciding, that the Medicaid Act required coverage of medically necessary treatments.

duration and scope" to fulfill the purpose of providing the service. 42 C.F.R. § 440.230(b). If medically necessary treatments are excluded, the coverage is not sufficient in amount, duration and scope to fulfill the purpose of providing the service.

In sum, the State may limit Medicaid expenditures and Medicaid coverage so long as the limitations are consistent with federal Medicaid law. The federal law allows the State to decline to cover dental services. If, however, the State opts to cover dental services, the federal law requires that medically necessary dental treatments be covered.

### III. State Medicaid Laws

The parties agree that IC 12–15–21–3 controls their state law dispute, but they differ in their interpretation of that statute. According to the statute, the State coverage regulations must establish

> "*limitations that are consistent with medical necessity* concerning the amount, scope, and duration of the services and supplies to be provided. The rules may contain limitations on services that are more restrictive than allowed under a provider's scope of practice (as defined by Indiana law)."

IC 12–15–21–3(3) (emphasis added). Thie contends that the emphasized phrase requires the State to cover all medically necessary treatments in each service category in which the State provides coverage. The State disagrees, contending the phrase allows exclusion of medically necessary treatment if the exclusions are "designed to provide the most services for those persons most in need." *Appellee's Brief* at 19.

■ No Indiana case directly addresses whether the statute requires Medicaid coverage of medically necessary treatments.[5] Al-

though there is no case law interpreting the statute, the language is unequivocal. According to the statute, the State Medicaid coverage limitations must be "consistent with medical necessity." The statute thus establishes a precept: medically necessary treatment must be covered.

This precept is borne out by the State regulation describing the Medicaid program:

> "Under [the state and federal Medicaid statute and the federal Medicaid regulations], the office of Medicaid policy and planning (office), with the advice of its medical staff, hereby adopts and promulgates this rule to:
>
> (1) interpret and implement the provisions of IC 12–15–5–1 and IC 12–15–21–3;
>
> (2) ensure the efficient, economical, and medically reasonable operation of a medical assistance program (hereinafter referred to as Medicaid) in Indiana; and
>
> (3) safeguard against overutilization, fraud, abuse and utilization and provision of services and supplies which are not medically reasonable or medically necessary."

405 IAC 1–6–1(a) (1996). The regulation goes on to specify that certain services are limited "consistent with medical necessity on the duration of services" and that other services are excluded because "such services are not medically necessary in view of alternative services available under this rule." 405 IAC 1–6–1(b)(5), (b)(6) (1996). Nothing in the regulation indicates that Indiana intends to exclude medically necessary treatments. Rather, the regulation indicates that limitations and exclusions apply only to treatments that are not medically necessary. To be consistent with the purpose of the Medicaid

---

5. Thie cites *Magnant v. Ambulatory Renal Services*, 575 N.E.2d 1029 (Ind.Ct.App.1991), which states that Medicaid payments to providers are dependent upon whether the services rendered are "medically reasonable and necessary." *Id.* at 1032. In *Magnant*, however, the issue was whether the State could withhold payments from providers after the State had issued prior authorization for the providers' services. The court did not directly consider whether the State must cover medically necessary services. In *Indiana Dep't of Welfare v. Stagner*, 410 N.E.2d 1348 (Ind.Ct.App.1980), the court referenced *Magnant*

and stated that "medical necessity is a question of fact properly decidable by the [State Medicaid] Department." *Id.* at 1351 (emphasis added). Our supreme court quoted that statement in *Indiana Dep't of Welfare v. Chair Lance Service*, 523 N.E.2d 1373, 1378 (Ind.1988). The statements concerning medical necessity in *Magnant*, *Stagner*, and *Chair Lance* were made in contexts unrelated to the present context. Although dicta, the statements suggest that the State has authority to define medical necessity as it pertains to Medicaid coverage.

program as expressed in the State regulation, medically necessary treatments must be covered.

## IV. Determination of Medical Necessity

The conclusion that federal and state laws mandate Medicaid coverage of medically necessary treatments does not, however, resolve coverage decisions, for it leads to the second question: who determines which treatments are medically necessary, or, more simply, who defines medical necessity?

Neither the federal Medicaid Act nor the accompanying regulations define medical necessity. The courts have taken two approaches to analyzing definitions of medical necessity. The first, exemplified in the *Beal* dissent, reasons that the choice of treatments and procedures must be made by the patient and the physician, without state intervention. As such, a state definition of medical necessity is deemed invalid if it interferes with the patient/physician decision. *See* 432 U.S. at 449–50, 97 S.Ct. at 2373–74 (Brennan, J., dissenting). According to this view, "the very heart of the congressional scheme is that the physician and patient should have complete freedom to choose those medical procedures ... which are best suited to the needs of the patient." 432 U.S. at 450, 97 S.Ct. at 2374.

The second approach to analyzing medical necessity appears in more recent cases. Perhaps due to a national trend toward managed health care and private insurance limitations, some courts have recognized that patients and health care professionals cannot be the sole arbiters of medical necessity for the Medicaid program. According to this approach, the State also has a role in defining medical necessity. The approach is demonstrated in *Cowan v. Myers,* 187 Cal.App.3d 968, 232 Cal.Rptr. 299 (1986), *cert. denied,* 484 U.S. 846, 108 S.Ct. 140, 98 L.Ed.2d 97 (1987).

In *Cowan,* Medicaid recipients challenged the California definition of medical necessity, which read:

"A service is 'medically necessary' or a 'medical necessity' when it is reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain."

232 Cal.Rptr. at 302–303 (quoting Cal.Admin.Code, tit. 22, § 14059.5). The *Cowan* court found that this definition comported with the Medicaid Act, reasoning that the Act allows the state to place generic limits on Medicaid services. 232 Cal.Rptr. at 306. The Court pointed out, however, that its analysis would be different had the state attempted to exclude particular conditions rather than to define medical necessity generally. *Id.*[6]

The dissent in *Cowan* viewed the California definition of medical necessity as too narrow and found the definition inconsistent with the federal Medicaid Act. Acknowledging that the Medicaid Act does not define medical necessity, the dissent expressed the belief that coverage should be consistent among the states and as such argued that the *Medicare* definition of medical necessity should govern Medicaid. 232 Cal.Rptr. at 316. The Medicare statute requires coverage that is "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A) (West 1997). Although application of the Medicare definition of medical necessity would result in uniform Medicaid coverage, such an application would also contradict the Medicaid enabling legislation. The legislation indicated that each state may provide coverage as far as practicable within that state's fiscal conditions. 42 U.S.C. § 1396 (West 1997).

■ Absent a federal definition of medical necessity, the responsibility for defining medical necessity is left to the states. *Rush v. Parham,* 625 F.2d 1150, 1155 (5th Cir.1980) (states may define medical necessity). This conclusion is consistent with the structure of the Medicaid program. Given that there is joint federal-state governance of the Medicaid program, the State must be free to define

---

**6.** In *Cowan,* the court's analysis turned in part on the non-discrimination provision in 42 C.F.R. § 440.230(c). The parties here agree that § 440.230(c) does not apply to this case, because the section does not apply to optional service categories.

medical necessity within federal parameters, at least insofar as that definition impacts coverage in optional service areas. Within those parameters, the state has broad authority to define medical necessity. So long as the definition comports with the purpose of the Medicaid Act and the regulatory requirement that coverage be sufficient in amount, duration and scope, each state is free to define medical necessity as broadly or as narrowly as required to fulfill the state's policy goals; and each state may define medical necessity in a manner that is, to use the statutory language, "practicable" for that state. 42 U.S.C. § 1396.

Having determined that the State must cover medically necessary treatments and may define medical necessity, we turn to whether the State's definition is valid as it applies to Thie. First, we examine the State's definition of medical necessity. If the definition is valid, it sets the minimum standard for State Medicaid coverage—the State must cover Thie's dentures if coverage is within the definition of medical necessity.

The State regulations do not contain a general definition[7] of medical necessity. The regulations do define "medically reasonable and necessary," and in the absence of a definition of medical necessity, we conclude that the definition of medically reasonable and necessary controls the determination of whether dentures are medically necessary for an edentulous person.

The definition reads: "'Medically reasonable and necessary service' means a service which meets current professional standards commonly held to be applicable to the case." 405 IAC 1-6-2(h) (1996). The definition is certainly valid according to federal law, which requires that the definition be consistent with the purpose of the Medicaid Act and that it include treatment sufficient in amount, duration and scope to fulfill the pur-

pose of the covered service. This definition is the basis for assessing Thie's summary judgment motion.

■ According to the definition, the State Medicaid program must cover dentures for Thie if dentures are consistent with current professional health care standards applicable to her condition. Thus, upon filing her summary judgment motion, Thie had the burden of proving that the State's exclusion of dentures was inconsistent with medical necessity; that is, that the exclusion conflicted with current professional standards. She sustained this burden. She presented her own affidavit establishing that she is eligible for Medicaid and has no teeth. She also presented affidavits from two dentistry experts, both of whom indicated that teeth or dentures are necessary for proper nutrition, respiration and oral articulation. *Record* at 30–35. These affidavits established that dentures meet current professional standards for treatment of edentulous individuals like Thie. As such, Thie made a prima facie case that Indiana's regulation excluding dentures was invalid, because the regulation excluded medically necessary treatment.

Once Thie made the prima facie case in her summary judgment motion, the burden was on the State to present evidence that her dentures are not medically necessary. The State did not do so, and the Record contains nothing to rebut Thie's evidence that dentures are consistent with professional standards and, thus, are medically necessary.[8]

■ Based on our conclusions that Indiana's Medicaid program must cover medically necessary treatments in the dental service category, that the phrase "medically necessary treatment" is defined by Indiana regulation as a "medically reasonable and necessary service" which is treatment that meets current professional standards, we hold that the regulatory amendment re-

7. Several regulatory sections describe medical necessity with regard to certain services but none of those sections defines the term with regard to dental services. *See, e.g.,* 405 IAC 1-6-12(h)(6) (durable equipment); 1-7-3(I)(7) (prior authorization); 1-7-13(b)(3) (podiatry).

8. The State designated evidence on this issue based on information provided by the Indiana

Dental Association. Thie moved to strike the Dental Association evidence as hearsay, and the trial court granted the motion. *Record* at 150. The State does not challenge the trial court's ruling on appeal, and we must uphold the evidentiary exclusion absent an abuse of discretion. *See Grose v. Bow Lanes, Inc.,* 661 N.E.2d 1220, 1223–26 n. 2 (Ind.Ct.App.1996).

flected in 18 Ind.Reg. 11 at 2764 (1995) fails to provide dentures determined to be medically necessary and is invalid under both federal and state law. We reverse the entry of summary judgment for the State and remand to the trial court for entry of summary judgment in favor of Thie and for designation of an appropriate remedy.

Reversed.

SULLIVAN and STATON, JJ., concur.