Katherine L. DAVIS, in her official capacity as Secretary of the Indiana Family and Social Services Administration, Kathleen D. Gifford, in her official capacity as Assistant Secretary of the Indiana Office of Medicaid Policy and Planning, Appellants–Plaintiffs,

v.

James SCHRADER, et al., Appellees–Defendants.

No. 49A02–9602–CV–00087.

Court of Appeals of Indiana.

Oct. 30, 1997.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Frances Barrow, Deputy Attorneys General, Indianapolis, for appellants-plaintiffs.

Kenneth J. Falk, Jacquelyn Bowie, Indianapolis, for appellees-defendants.

## OPINION

KIRSCH, Judge.

The Indiana Department of Family and Social Services appeals a summary judgment in which the trial court invalidated a State Medicaid regulation. The parties present four issues, which we restate as:

I. Whether the Indiana Medicaid regulation excluding coverage for orthopedic shoes violates federal Medicaid law.

II. Whether the above-referenced Indiana Medicaid regulation violates state Medicaid law.

III. Whether the above-referenced Indiana Medicaid regulation creates an unconstitutional irrebuttable presumption.

IV. Whether the above-referenced Indiana Medicaid regulation violates the Americans with Disabilities Act.[1]

We affirm, based on our resolution of Issues I and II.[2]

---

1. *See* 42 U.S.C. § 12132.

2. This appeal was consolidated for oral argument with two other appeals: *Thie v. Davis, et al.,* No. 49A02–9609–CV–574, 688 N.E.2d 182 and *Coleman v. Indiana Family and Social Services Administration,* No. 49A02–9609–CV–608, 687 N.E.2d 366. Although the legal issues in each appeal are analogous, we issue a separate opinion for each due to the factual differences among them.

## FACTS AND PROCEDURAL HISTORY

Medicaid recipients James Schrader and Jerry Yarboro have medical problems that cause foot pain so severe they cannot walk without assistance. If, however, they wear orthopedic shoes or shoes with corrective features, Schrader and Yarboro can walk unassisted. Their health care providers prescribed special shoes for them, and both men requested Medicaid coverage for the shoes. The State refused to pay for the shoes, based on a December 1, 1993 regulatory amendment excluding coverage for most orthopedic shoes and corrective features. *See* 405 IAC 1–7–27(h)(9)–(11) (1996). Prior to the amendment, the State covered orthopedic shoes and corrective features. 405 IAC 1–7–27(f) (1992).

Schrader and Yarboro sought to enjoin the State from eliminating the shoe coverage and sought a declaratory judgment to invalidate the regulatory amendment. They then filed a summary judgment motion, based in part on affidavits in which their health care providers attested that the disputed shoes were medically necessary. The trial court concluded that the federal Medicaid regulations and the State Medicaid laws require the State Medicaid program to pay for medically necessary items, and granted summary judgment. *Record* at 281–82 (Conclusion Nos. 10–11). The trial court also concluded that "[t]he decision of whether or not certain treatment or devices are medically necessary rests with the recipient's physician." *Record* at 282 (Conclusion No. 12). The State now appeals.

## DISCUSSION AND DECISION

This appeal presents issues analogous to those described in *Thie v. Davis, et al.,* 688 N.E.2d 182 (Ind.Ct.App. October 30, 1997) and *Coleman v. Indiana Family and Social Serv. Admin.,* 687 N.E.2d 366 (Ind.Ct.App. 1997). The State described the issues succinctly: "[t]his case is about the limits on Medicaid coverage and who gets to set them." *Schrader Reply Brief* at 1. The trial court in this case invalidated the State's ef-

forts to limit orthopedic shoe coverage, holding that the State must cover medically necessary treatments; conversely, the trial courts in *Thie* and *Coleman* upheld similar limits and determined that the State *could* exclude medically necessary treatments from Medicaid coverage. We reversed the trial courts in *Thie* and *Coleman* and held that the State may establish coverage limitations, but may not exclude medically necessary treatments within covered categories. Here, we again hold that the State must cover medically necessary treatments in service areas in which the State opts to provide coverage.

The *Thie* opinion explains the analysis applicable to our decision here. Rather than reiterate, we summarize the analysis as follows:

■ Indiana participates in the federal Medicaid program. To receive the federal financial assistance available through the program, Indiana must comply with the applicable federal Medicaid laws. The federal statute mandates that the State program cover certain medical services; the statute lists other services that the State may cover at its option. 42 U.S.C. § 1396a.[3] If the State chooses to provide coverage in an optional service area, the coverage must be "sufficient in amount, duration and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). The State may limit coverage based on "such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). To be sufficient in amount, duration, and scope, the State Medicaid program must cover medically necessary treatments and equipment. *See Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); *Allen v. Mansour,* 681 F.Supp. 1232 (E.D.Mich.1986).

The applicable State law requires that the State coverage regulations establish "limitations that are consistent with medical necessity concerning the amount, scope and duration of the services and supplies to be provided." IC 12–15–21–3(3). Like the

---

**3.** As used in this opinion, "service" means a broad category of medical coverage such as hospitalization or dental care. "Treatment" and "equipment" mean specific methods of addressing a particular medical situation, such as dentures to address lack of teeth.

federal statute and regulation, the State statute indicates that the State must cover medically necessary treatments and equipment.

▇▇▇ Given that the State must cover medically necessary treatments, the next question is whether the State may define "medical necessity" as it applies to Medicaid coverage. The trial court in this case concluded that the State may not define the term; instead, the trial court held that the recipient's health care provider is the sole arbiter of whether a particular item or treatment is "medically necessary." We disagree. As explained in *Thie*, the federal laws delegate the authority to define medical necessity to the State. *See Cowan v. Myers*, 187 Cal. App.3d 968, 232 Cal.Rptr. 299 (1986), *cert. denied*, 484 U.S. 846, 108 S.Ct. 140, 98 L.Ed.2d 97 (1987). The State may define medical necessity in a manner that is practicable for the State, so long as the definition comports with the federal Medicaid laws.

▇▇▇ Based on the above-summarized analytical framework, an individual who challenges a State Medicaid exclusion must: (1) identify the State definition of medical necessity applicable to the challenged exclusion;[4] and (2) prove that the excluded equipment or treatment is medically necessary as defined by the State. If the individual proves that the equipment or treatment is medically necessary according to the State definition, the regulatory exclusion is invalid and the State Medicaid program must cover the equipment or treatment.[5]

In *Thie*, the regulatory section at issue contained no definition of medical necessity, so we based our analysis on the general definition of "medically reasonable and necessary" set out in 405 IAC 1–6–2(h) (1996). Here, in contrast, the regulation at issue contains a working definition of medical ne-

cessity. The regulation, which describes the State Medicaid coverage of durable medical equipment, explains that individuals desiring such equipment must obtain prior authorization from the State Medicaid program (with certain exceptions not applicable here). 405 IAC 1–6–12(h)(1) (1996). The subsection describing prior authorization contains a working definition of medical necessity:

"Individual requests for prior authorization shall be reviewed ... on the basis of the following:

(A) *Medical Necessity. The item must be necessary for the treatment of an illness or injury or to improve the functioning of a body member.*

(B) Reasonableness. The item must be adequate for the medical need; however, items with unnecessary convenience or luxury features will not be authorized.

(C) Length of expected need. The anticipated period of need, plus the cost of the item will be considered in determining whether the item shall be rented or purchased. This decision shall be made by the office based on the least expensive option available to meet the recipient's needs."

405 IAC 1–6–12(h)(6) (1996) (emphasis added).[6]

▇▇▇ The regulatory subsection quoted above indicates that medically necessary equipment will be covered so long as the equipment has no convenience or luxury features. In another subsection, however, the regulation excludes orthopedic shoes and corrective features except when needed by children or diabetic individuals. 405 IAC 1–6–12(i) (1996). All other individuals who need such shoes have no Medicaid coverage for the shoes. 405 IAC 1–7–27(h)(9)–(11) (1996). This exclusion is inconsistent with the definition of medical necessity applicable to the

---

**4.** If there is no applicable State definition of medical necessity, the federal requirements control the validity of the exclusion, i.e., the coverage provided must comport with the purpose of the Medicaid Act, must be sufficient in amount, duration and scope, and must be reasonable. 42 C.F.R. § 440.230(b); 42 U.S.C. § 1396a(a)(17).

**5.** In the alternative, an individual could obtain coverage of excluded equipment or treatment by

proving that the State definition of medical necessity is invalid according to State or federal law.

**6.** The 1993 amendments excluding orthopedic shoes did not change the description of medical necessity. *See* 405 IAC 1–6–12(3)(B) (1992); 17 Ind.Reg. 3 at 342 (1993) (redlined version of amended regulation).

regulation. According to the definition, the State Medicaid program must cover medical equipment if the equipment is necessary for the treatment of an illness or injury or to improve the functioning of a body member.

 The Record here demonstrates that the disputed shoes are medically necessary according to the applicable definition of medical necessity. Schrader presented affidavits from his podiatrist and his orthopedic surgeon to establish that he has several foot problems, including multiple deformities, blocked glands, and painful calluses. *Record* at 113, 116. Both specialists indicated that Schrader needs orthopedic shoes to walk. *Record* at 113, 116. Similarly, Yarboro submitted his own affidavit to establish that one of his legs is three inches shorter than the other, and that he needs a special shoe to decrease the pain of walking. *Record* at 204. According to these undisputed affidavits, the special shoes improve the functioning of the men's legs and feet; indeed, without the shoes, they cannot use their legs and feet for walking. Walking is certainly within the ordinary meaning of the "functioning" of the legs and feet. As such, Schrader and Yarboro sustained their burden of establishing that the shoes are necessary to improve the functioning of a body member, i.e., that the shoes are medically necessary within the definition in 405 IAC 1–6–12(h)(6).

The State insists that the Medicaid program need not cover orthopedic shoes, citing *Budnicki v. Beal*, 450 F.Supp. 546 (E.D.Pa. 1978), among other cases. In *Budnicki*, the court found that a state could reduce Medicaid coverage for orthopedic shoes under certain circumstances. Unlike the recipients here, however, the recipients in *Budnicki* did not establish that the special shoes were medically necessary. Further, the *Budnicki* court focused primarily on procedural issues and did not specifically address whether the state must cover medically necessary items.[7] Accordingly, the *Budnicki* decision does not contradict our decision here.

Based on our conclusion that the State must cover medically necessary treatments and that medical necessity is defined for purposes of orthopedic shoes and corrective shoe features as equipment that is necessary for the treatment of an illness or injury or to improve the functioning of a body member, we find that the regulatory amendment reflected in 17 Ind.Reg. 3 at 341–42 fails to provide shoes determined to be medically necessary for Schrader and Yarboro. We hold the amendment invalid according to federal and state Medicaid law, and affirm the trial court's summary judgment on those grounds. Given this holding, we need not address whether the amendment is unconstitutional or violates the Americans with Disabilities Act.

Affirmed.

SULLIVAN and STATON, JJ., concur.

---

7. The *Budnicki* court did state that an alteration in Medicaid coverage must be "rationally related to the best interests of recipients." 450 F.Supp. at 557.