168 P.3d 907

Linda CALLEN, Plaintiff/Appellant,

v.

Anthony ROGERS, Director, Arizona Health Care Cost Containment System, in his official capacity; Arizona Health Care Cost Containment System, a state agency; and Health Choice Arizona, Defendants–Appellees.

No. 1 CA–CV 05–0792.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 18, 2007.

Community Legal Services By Srinivasan Varadarajan, Phoenix, Attorneys for Plaintiff/Appellant.

Johnston Law Office PLC By Logan T. Johnston, III, Phoenix, Attorneys for Defendants/Appellees Rogers and Arizona Health Care Cost Containment System.

Campbell Yost Clare & Norell PC By John J. Checkett, James A. Frisbie, Phoenix, Attorneys for Defendant/Appellee Health Choice Arizona.

## OPINION

SNOW, Judge.

¶ 1 Linda Callen appeals from the superior court's judgment affirming the Arizona Health Care Cost Containment System's ("AHCCCS") denial of a procedure Callen requested for the extraction of all of her remaining teeth. Because the Director of AHCCCS made no erroneous legal conclusions and his decision is supported by substantial evidence, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Callen was enrolled as a member in Health Choice Arizona, a health plan that contracts with the state AHCCCS Administration to provide AHCCCS benefits to the eligible Arizona population. Callen was fifty-three years old at the time of the events giving rise to this appeal. She feared dentists and had not been to see one in more than thirty-two years. She apparently first sought treatment for a swollen and painful jaw at a hospital emergency room in August 2003. She was told that her teeth might be the cause of her pain. She was given antibiotics and pain medication and sent home.

¶ 3 She eventually obtained a referral from Health Choice to see a dentist, Dr. Susan Larsen. Callen consulted Dr. Larsen approximately eight months after Callen's emergency room visit. Dr. Larsen noted "severe periodontal disease, numerous missing teeth, gross calculus, caries, and extensive mobility." Dr. Larsen referred Callen to an oral surgeon, Dr. Jeffrey Kootman. Dr. Kootman requested authorization from Health Choice for extraction of all of Callen's remaining teeth and an alveoloplasty, a preparatory procedure for dentures. He proposed that the extractions and the alveoloplasty, in which tooth sockets are shaped, be performed at the same time under general anesthesia.

¶ 4 The state AHCCCS plan only provides coverage for "emergency dental care and extractions" for its adult members. Arizona Revised Statutes ("A.R.S.") section 36–2907(A)(5) (2003).[1] For purposes of implementing the statute, the Arizona Administrative Code ("A.A.C.") further defines "emergency dental care services" as:

(1) Oral diagnostic examination including laboratory and radiographs if necessary to determine an emergency medical condition;

(2) Immediate and palliative procedures, including extractions if medically necessary, for relief of severe pain associated with an oral or maxillofacial condition;

(3) Initial treatment for acute infection;

(4) Immediate and palliative procedures for acute craniomandibular problems and for traumatic injuries to teeth, bone, or soft tissue;

(5) Preoperative procedures; and

---

1. Medicaid mandates a broader scope of dental coverage for children. *See, e.g.,* 42 U.S.C. § 1396d(r)(3) (2003).

(6) Anesthesia appropriate for optimal patient management.

A.A.C. R9–22–207(B).

¶ 5 Upon its review, Health Choice eventually approved the extraction of eight of Callen's teeth based on x-rays showing shaded areas appearing on the root tip of those teeth, which demonstrated abscesses. It determined that removal of these teeth qualified as "emergency dental care" because the extractions were medically necessary and required for relief of Callen's severe pain. Health Choice denied approval for the extraction of Callen's remaining ten teeth on which there was no shading. It also denied approval of the alveoloplasty and the general anesthesia for the extractions. Callen requested an administrative hearing to review Health Choice's decision.

¶ 6 At the hearing, Callen testified that her "teeth hurt every day, although she could not discern which teeth hurt." The Administrative Law Judge ("ALJ") heard Callen's testimony and reviewed the documents pertinent to Callen's request submitted by both sides. The ALJ found that the procedures requested constituted emergency dental care.

¶ 7 While adopting many of the ALJ's factual findings, the AHCCCS Director determined that Callen had not introduced sufficient evidence to establish that the extraction of her teeth that did not show abscesses constituted emergency dental care. He also found no documentation supporting Callen's need for dentures and thus no need for an alveoloplasty. He also did not find a need for Callen's teeth to be removed under general anesthesia.

¶ 8 Callen appealed to the superior court. The superior court affirmed the Director's decision and Callen timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

■■■ ¶ 9 On appeal from the superior court's review of an administrative decision, we consider whether the agency action was supported by the law and substantial evidence and whether it was arbitrary, capricious or an abuse of discretion. *See J.L.F. v. Ariz. Health Care Cost Containment Sys.*, 208 Ariz. 159, 161, ¶ 10, 91 P.3d 1002, 1004 (App.2004).[2] In reviewing questions of law decided by the administrative agency, we reach our own legal conclusions. *See Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 221, ¶ 19, 84 P.3d 482, 486 (App.2004). However, in reviewing factual determinations, we decide "only whether there is substantial evidence to support the administrative decision. A decision supported by substantial evidence may not be set aside as being arbitrary and capricious." *Id.* at 220, ¶ 14, 84 P.3d at 485 (citations omitted).

¶ 10 Callen makes three arguments on appeal. She argues first that, pursuant to Medicaid, once Arizona provides any dental coverage as an AHCCCS benefit, it is obliged to provide all necessary dental care to its AHCCCS-eligible population. Second, Callen argues that despite the statute specifying that AHCCCS covers only "emergency dental care," a companion provision covering outpatient services is sufficiently broad to provide coverage for necessary dental procedures. Third, she argues that even if only emergency dental care is covered by the plan, the Director abused his discretion in determining that the services she seeks do not qualify as emergency dental care. We reject each of these arguments and address them in turn.

## A. Medicaid Does Not Require Arizona to Provide All Necessary Dental Services If It Decides To Provide Any Dental Service.

¶ 11 AHCCCS is Arizona's Medicaid program. Under Medicaid, Title XIX of the Social Security Act, *see* 42 U.S.C. § 1396 *et seq.* (2003), ("Act") the federal government provides matching funds to states to partially pay for state programs that provide "medical assistance" to recipients who qualify based

---

**2.** Under A.R.S. § 41–1092.08(B) (2003), "the head of the agency, executive director, board or commission may review the [ALJ's] decision and accept, reject or modify it." If the Director does reject or modify the ALJ's decision, he or she must provide a "written justification setting forth the reasons for the rejection or modification." *Id.* The Director did so here.

on need. The Act defines the categories of "medical assistance" for which the federal government will pay matching funds. To participate in the Medicaid program the Act requires a state to provide designated categories of "medical assistance" to its plan participants.[3] 42 U.S.C. § 1396a(a)(10). Other categories of medical assistance as defined by the Act, however, are optional. A state may, but need not, provide any of these optional services. 42 C.F.R. § 440.225 (1995) ("Any of the services defined in subpart A of this part ... may be furnished under the State plan at the State's option.").

¶ 12 With respect to the "medical assistance" that a state must provide, the Act does not require that the "medical assistance" be provided to the extent needed by every individual recipient of benefits. Rather, states are allowed to place usage limitations on the assistance even if the limitations are inconsistent with an individual recipient's personal medical needs. *See, e.g.,* 42 C.F.R. § 440.230(d) (permitting state plans to impose coverage limitations based on medical necessity and utilization review).

¶ 13 For example, in *Alexander v. Choate,* 469 U.S. 287, 309, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), the Supreme Court upheld the fourteen-day annual limit on inpatient hospital stays imposed by Tennessee's Medicaid plan even though the Act requires states to cover inpatient hospital services. The Supreme Court recognized that some patients would require more than fourteen days of inpatient services in a year but noted that Medicaid did not require that a state plan "guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs." *Id.* at 303, 105 S.Ct. 712. Rather, "the benefit provided through Medicaid is a particular package of health care services.... That package of services has the general aim of assuring that individuals will receive necessary medical

care, but the benefit provided remains the individual services offered—not 'adequate health care.'"[4] *Id.; see also Hope Med. Group for Women v. Edwards,* 63 F.3d 418, 426 (5th Cir.1995) (holding that states may "choose to limit the provision of particular medical procedures or treatments as long as the restriction complies with [42 C.F.R. § 440.230].")*; Hern v. Beye,* 57 F.3d 906, 911 (10th Cir.1995) ("It may be that, pursuant to a generally applicable funding restriction or utilization control procedure, a participating state could deny coverage for a service deemed medically necessary in a particular case."); *Miller v. Whitburn,* 10 F.3d 1315, 1321 (7th Cir.1993) (upholding reasonable applications of exclusion for experimental treatments); *Charleston Memorial Hosp. v. Conrad,* 693 F.2d 324, 330 (4th Cir.1982) (approving limits on inpatient and outpatient stays because the authorized limit reasonably met the needs of the great majority of Medicare recipients); *Curtis v. Taylor,* 625 F.2d 645, 652 (5th Cir.1980) (upholding a state plan's limit of three outpatient physicians visits per month because the authorized level of service was sufficient to meet the needs of a majority of the recipients).

¶ 14 As to categories of "medical assistance" that are optional under the Act, states need not provide such assistance even if, in a particular case, it may constitute necessary treatment. *See* 42 C.F.R. § 440.225; *see also Katz v. New Mexico Dep't of Human Servs.,* 95 N.M. 530, 624 P.2d 39, 43 (1981) (holding that Medicaid does not require state plans to provide services that are not required by the statute even if they are medically necessary); *Jackson v. Stockdale,* 215 Cal.App.3d 1503, 1513–16, 264 Cal.Rptr. 525 (Cal.App.1989) (holding that because dental services are optional under the Act, California was under no obligation to provide them even if necessary, but

---

3. "These are, generally speaking, (1) in-patient hospital services, (2) out-patient hospital services, (3) laboratory and x-ray services, (4) nursing facility services, early and periodic screening, diagnostic and treatment services (EPSDT) and family planning services, (5) physicians' services, (6) midwife services, and (7) nurse practitioner services." *Salgado v. Kirschner,* 179 Ariz. 301,

304, 878 P.2d 659, 662 (1994) (citing 42 U.S.C. § 1396a(a)(10)(A)).

4. A state plan may nevertheless provide coverage for the medical needs of benefit recipients even though the Act does not require such an individualized approach. *See, e.g., Thie v. Davis,* 688 N.E.2d 182, 187–88 (Ind.App.1997).

once it did so without limitations in its coverage statute, the state welfare agency could not impose exclusions by regulation); *Dist. of Columbia Podiatry Soc'y v. Dist. of Columbia,* 407 F.Supp. 1259, 1263 (D.D.C.1975) ("[A] participating state is free to choose which, if any, of the optional services it will include in its Plan."). Further, whereas 42 C.F.R. § 440.230(c) prohibits state plans from arbitrarily denying or reducing "the amount, duration, or scope of a required service ... solely because of the diagnosis, type of illness, or condition [of the recipient]," there is no such prohibition on medical assistance that is optional under the Act. *See, e.g., Ohlson v. Weil,* 953 P.2d 939, 944 (Colo. App.1997) ("We choose to honor the plain language of the regulation and, accordingly, conclude that [section] 440.230(c) is inapplicable to ... an optional service."); *Podiatry Soc'y,* 407 F.Supp. at 1265 ("It appears then that it is the position of HEW, the agency which issued the Medicaid regulations, that the 'amount, duration, and scope' provision permits the District to limit the scope of podiatric (or other optional) services compensable under Medicaid."). Thus, states need not provide optional services at all, and when they do so, they may deny or reduce the amount, duration, or scope of the service .because of the diagnosis, type of illness, or condition" of the recipient unless otherwise prohibited by law.

¶ 15 The Act leaves to each participating state the ability in large measure to determine "the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in the best interests of the recipients." *Salgado,* 179 Ariz. at 304, 878 P.2d at 662 (1994)(internal quotations omitted). Due to the substantial discretion the Act gives the states in selecting and defining the scope of coverage, the Act is frequently described as an example of "cooperative federalism" between the states and the federal government. *See, e.g., Wis.*

*Dep't of Health and Family Servs. v. Blumer,* 534 U.S. 473, 495, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002).

¶ 16 Callen acknowledges that dental coverage is an optional coverage under Medicaid and, as a result, Arizona is under no obligation to provide any dental service at all. Callen argues, however, that once a state elects to cover any dental service in its plan, it is obliged by the Act and its implementing regulations to cover all necessary dental services.[5] She bases this argument on *Cushion v. Dep't of PATH,* 174 Vt. 475, 807 A.2d 425, 428 (2002). In *Cushion,* state regulations implementing the Vermont Medicaid plan covered full dentures and oral surgery but excluded coverage for partial dentures. *Id.* at 427. Cushion and her co-plaintiff both had established a need for partial dentures, but, pursuant to the plan's specific exclusion of partial dentures, their requests were denied. *Id.*

¶ 17 On review, the Vermont Supreme Court limited the regulatory exclusion of partial dentures to apply only to dentures that were sought uniquely for cosmetic purposes. *Id.* at 430. It did so because it held that once the Vermont plan offered full dentures to those with a need for them, it was required to offer partial dentures to those who could establish an equivalent need. *Id.* at 429. Citing earlier cases pertaining to Medicaid coverage for services in optional categories of medical assistance, it determined that "the state's provision of dental services [must] 'bear [ ] a rational relationship to the underlying federal purpose of providing the service to those in greatest need of it.' " *Id.* at 428 (quoting *White v. Beal,* 555 F.2d 1146, 1151 (3d Cir.1977)).

¶ 18 We are not certain of the source from which *Cushion,* or the earlier cases it cites, derives a federal requirement that states providing optional services under the Act

5. AHCCCS argues that Callen waived this argument because she first raised it at the superior court in her reply brief. A review of the record demonstrates that Callen did first raise the argument in reply, but did so in response to AHCCCS's argument, asserted in its response, that "Arizona is free to limit its coverage of dental services for adults to emergencies."

While acknowledging in her reply that Arizona was not obliged to provide any dental services under federal law, Callen responded that if Arizona did choose to cover any dental services, federal Medicaid law required that it at least cover medically necessary dental services. Under these circumstances we do not find that Callen waived this argument.

must provide them to those in greatest need, or to others with a similar need for a similar service. A categorical determination as to what constitutes the greatest or even similar medical need among competing conditions and treatments is one that courts are not well-suited to make. *See, e.g., Dexter v. Kirschner*, 984 F.2d 979, 985 n. 8 (9th Cir.1992) ("The Constitution does not empower a federal court to second-guess state officials charged with the difficult task of allocating limited public welfare funds."); *see also Anderson v. Director, Dep't of Soc. Serv.*, 101 Mich.App. 488, 300 N.W.2d 921, 924 (1981) ("The court is not in a position to determine which medical services should be provided to poor people given limited state finances and how to optimize that system.").

¶ 19 In the context of some optional categories of medical assistance, however, the Act itself requires equal treatment among candidates for the optional service. For example, the Act specifies that if a state chooses to provide transplant services, to receive federal matching funds for such services, it must ensure that similarly situated individuals are treated alike. 42 U.S.C. § 1396b(i); *Salgado*, 179 Ariz. at 304, 878 P.2d at 662 (holding that because Arizona had chosen to provide transplant services under the Act it was bound by the Act's requirement that similarly situated individuals are [to be] treated alike.) But neither *Cushion* nor Callen points to a similar statutory or regulatory requirement with respect to the optional category of dental services.

¶ 20 Even if there were such a requirement, however, Arizona's dental coverage treats equally all persons who are similarly situated with respect to a need for dental care. Medicaid does not prevent states from restricting coverages for optional services based on the degree of need that the recipient has for the service. *Ohlson*, 953 P.2d at 944; *Podiatry Soc'y*, 407 F.Supp. at 1265. Thus, Arizona can provide optional dental services only to those who have an emergency need for them.

¶ 21 Even with respect to required services, Medicaid permits states to provide for emergency need in certain circumstances in which it does not require a state to provide for "medically necessary" care. In *Curtis*, 625 F.2d at 652, the Fifth Circuit upheld a restriction in the Florida Medicaid plan limiting to three the monthly outpatient visits a patient could make to a physician unless the additional visits were required by an emergency need. Although outpatient services are a category of "medical assistance" that state plans are required to provide under the Act, the court upheld the limit as an appropriate utilization limitation calculated to adequately provide for the medical needs of most of the eligible recipients. *Id.* To the extent the exception for outpatient visits necessitated by an emergency need allowed more than three monthly outpatient visits for those patients who qualified, the court held that such additional coverage is acceptable because it "simply reflects a judgment by the state that those persons who need emergency care have a higher degree of medical necessity than those who do not." *Id.* Referring to 42 C.F.R. § 440.230(d)'s authorization of distinctions based on such criteria as medical necessity, the court noted that "[t]hose conditions that result in emergency medical situations, where care is most crucial, may receive exceptional treatment." *Id.*

¶ 22 Thus, to the extent that AHCCCS has an obligation in providing dental services to provide those services to those with the greatest need for them, it has met this requirement by providing coverage for all emergency dental care and extractions.

¶ 23 Callen asserts, however, that the analysis used by the *Cushion* court requires a more expansive result here. Section 440.230(b), 42 C.F.R., requires that "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." In *Cushion*, the Vermont Supreme Court apparently interpreted this regulation to require that once dental services were offered, equivalent services had to be offered to those who could establish a need for them. The *Cushion* court determined that when the regulation referred to the "purpose" for which the service was offered, it referred to the federal purpose in placing the service in the Act as opposed to the state's purpose in including the optional dental coverage within the scope of the state's Medicaid program.

807 A.2d at 428 ("[I]n administering the Medicaid program, the state's coverage must achieve the federal purpose, not the state purpose."). The *Cushion* court then attempted to ascertain the federal purpose behind including "dental services" as a category of "medical assistance" under the Act by citing the definition of "dental services." *Id.* at 428–29. It concluded, without analyzing the context of the definition, that "the federal purpose, according to federal Medicaid regulations, includes the treatment of '[t]he teeth and associated structures of the oral cavity; and [d]isease, injury, or impairment that may affect the oral or general health of the recipient.'" *Id.* (quoting 42 C.F.R. § 440.100(a)(1)-(2)).

¶ 24 Callen argues that the logical conclusion of that analysis in this case is that, having decided to provide any dental services to its eligible population, Arizona is obliged to provide all necessary dental services to those who are eligible. However, neither the *Cushion* court's holding, nor that court's interpretation of 42 C.F.R. § 440.230(b), was as broad as Callen alleges.

■■■ ¶ 25 Nothing in *Cushion* or Medicaid provides that once a state decides to offer any service that falls within the definition of "dental services"—an optional category of "medical assistance"—it must provide its Medicaid-eligible population all necessary services that are included within the definition of "dental services." [6] *Cushion* itself only held that once Vermont determined that it would provide full dentures to those who had a need for them, it was obliged to provide partial dentures to those with equivalent need. *See Cushion,* 807 A.2d at 429–30. It did not explicitly hold that providing one

service within an optional category required a plan to provide all other services within that category so long as the services were needed. If the Act's purpose in including "dental services" as "medical assistance" was to require each state offering any dental service to provide all necessary dental services then it could have specified, either generally or in the specific context of dental services, that a state offering any optional services was required to provide all necessary services within that same category of medical assistance. It has not done so.

¶ 26 The Medicaid regulations define "dental services" to specify those types of services that qualify as "medical assistance" under the Act, and thus are services for which a state may receive federal matching funds pursuant to Medicaid. *See* 42 U.S.C. § 1396d(a)(1)-(28) (setting forth the types of medical care and services that are part of the definition of medical assistance). The Act's apparent purpose in designating such services as optional is to enhance the number of options from which a state may choose in tailoring the "medical assistance" that it can afford to provide its citizens with federal assistance.[7] *See, e.g., Salgado,* 179 Ariz. at 304, 878 P.2d at 662 (stating that the Act gives the state the discretion to choose "the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in the best interests of the recipients") (internal quotations omitted). To interpret the Act as Callen suggests would be to frustrate one of its central purposes—that of giving substantial discretion to states to choose the mix of services it offers its eligible population.

---

**6.** The court in *Thie,* does observe that 42 C.F.R. § 440.230(b) requires a state, once it has decided to provide any dental service, to provide all necessary dental services. *See* 688 N.E.2d at 185–86. Nevertheless, *Thie* bases its analysis on the premise that the Act requires participating states to provide all medically-necessary services to plan recipients. *Id.* at 185. It arrives at this conclusion without analyzing any of the significant contrary authority discussed above that demonstrates that services that fall within the categories of medical assistance designated as optional by the Act, including dental services, need not be provided even if the service is, in a

particular instance, medically necessary. We thus disagree with the dicta in *Thie.*

**7.** To the extent that the *Cushion* court suggests that a state's fiscal necessity is not a valid basis on which a state can limit services that are designated as optional by the Act, we disagree. While we understand how such logic would apply to services the Act requires the state plan to include, we assume that in many cases fiscal considerations play a predominant role in determining whether and to what extent a state may choose to include optional services in its state plan in light of other competing priorities.

¶ 27 If the Act were interpreted to require that Arizona either provide all necessary dental services or none at all, fiscal constraints could cause the State to opt out of providing any dental service. Such a result would not only be inconsistent with the flexibility that the Act seeks to provide the states in creating their plans, it would likely have the further effect of depriving state residents of otherwise available health care. When it comes to optional services, the Legislature may determine that it is better for the AHCCCS population to have coverage for emergency dental care than no dental coverage at all.

■ ¶ 28 In analyzing the requirement of 42 C.F.R. § 440.230(b) that the service be sufficient in amount, duration, and scope to reasonably achieve its purpose, a court may examine the purpose of the state's inclusion of the optional service within its plan to ensure that the state's purpose for providing the service is not frustrated. For example, courts that have identified state regulations that limit the coverage specified in the state plan have stricken such regulations on these or similar grounds. *See, e.g., McNeil–Terry v. Roling,* 142 S.W.3d 828, 834 (Mo.App.2004) (invalidating a state regulation that limited dental coverage provided by the state Medicaid plan); *Thie,* 688 N.E.2d at 186 (invalidating regulations that did not comply with the plan requirement that medically necessary services be provided); *Stockdale,* 215 Cal. App.3d at 1513–16, 264 Cal.Rptr. 525 (invalidating regulations that restricted plan coverage provisions).

¶ 29 In the instant case, the plain text of the statute makes clear that Arizona's "purpose" is to provide emergency dental care to its AHCCCS-eligible population. Callen offers no argument that Arizona's regulations implementing this statute frustrate or unfairly limit the provision of emergency dental services to plan participants. Nor does she argue that the emergency dental care specified in the regulation is not sufficient in amount, duration, or scope to provide for the emergency dental needs of plan recipients. We thus reject Callen's argument that having chosen to offer some services from a category of medical assistance defined as optional under Medicaid, AHCCCS is required to provide all necessary services that might fall within that optional category.

**B. No Coverage for Dental Services Exists Under A.R.S. § 36–2907(A)(2).**

■ ¶ 30 Callen further argues that even if A.R.S. § 36–2907(A)(5) only provides coverage for "emergency dental care," section 36–2907(A)(2) defines "outpatient health services" broadly enough so as to include necessary dental services within its definition.[8] However, affording the extensive interpretation to "outpatient services" that Callen suggests would deprive subsection (A)(5) of any meaning. If necessary dental services were covered because they were outpatient services, then the AHCCCS statute extending coverage for "emergency dental care" would be meaningless. "We presume the legislature did not intend to write a statute that contains a void, meaningless, or futile provision." *State v. Pitts,* 178 Ariz. 405, 407, 874 P.2d 962, 964 (1994).

■ ¶ 31 Further, "[w]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded." *Luchanski v. Congrove,* 193 Ariz. 176, 179, ¶ 14, 971 P.2d 636, 639 (App.1998). Dental care is provided for in its own section. *See* A.R.S. § 36–2907(A)(5). We thus decline to presume that the Legislature intended to include it in the outpatient services described in section 36–2907(A)(2).

■ ¶ 32 To the extent that section 36–2907(A)(2) defines outpatient health services as those "provided by or under the direction of a physician or a primary care practitioner," Dr. Kootman is neither. For purposes

---

8. AHCCCS again argues that these arguments are raised for the first time on appeal. However, Callen argued to the superior court that A.R.S. § 36–2907(A)(2) covered outpatient health services, that A.A.C. R9–22–205 required, at a minimum, coverage of medically necessary primary care provider services, and that these services encompassed dental care. Therefore, these arguments are not waived. We do agree, however, that Callen has abandoned any argument on appeal that Dr. Kootman's procedures qualified for reimbursement under 42 U.S.C. § 1396d(a)(5).

of AHCCCS coverage, a "physician" is defined as a person licensed pursuant to A.R.S. § 32–1401(21) (2002) (medical doctors) or A.R.S. § 32–1800(25) (2002) (doctors of osteopathic medicine). *See* A.R.S. § 36–2901(10) (2003). A "primary care practitioner" is a "nurse practitioner certified pursuant to title 32, chapter 15 or a physician assistant certified pursuant to title 32, chapter 25." *See* A.R.S. § 36–2901(13).

¶ 33 The record does not reflect that Dr. Kootman, who was the oral surgeon requesting authorization from Health Choice to perform the services requested by Callen, is a physician or a primary care practitioner. It establishes that he is a Doctor of Medical Dentistry and a board-certified oral surgeon. *See* A.R.S. § 32–1201(8) (2002) (defining "dentist" as a practitioner of the "general practice of dentistry and all specialties or restricted practices of dentistry"); A.R.S. § 32–1202 (2002) (defining the practice of dentistry to include treatment of all conditions of the oral cavity and adjacent and associated structures). He is not, by these terms a physician or a primary care practitioner, and it is not proposed that he will perform his oral surgery "under the direction of a physician or a primary care practitioner." Therefore, the oral surgery, as requested, does not qualify as an outpatient service.

**C. Substantial Evidence Supports the Director's Determination That All of the Extractions Sought By Callen Were Not Emergency Services.**

¶ 34 In reviewing the Director's factual conclusions we decide "only whether there is substantial evidence to support the administrative decision.... A decision supported by substantial evidence may not be set aside as being arbitrary and capricious." *Smith,* 207 Ariz. at 220, ¶ 14, 84 P.3d at 485; *J.L.F.,* 208 Ariz. at 161, ¶ 10, 91 P.3d at 1004.

¶ 35 The medical necessity of the extractions is not in dispute. The issue is whether the extractions and the associated alveoloplasty under general anesthesia qualify as "emergency dental care." According to AHCCCS regulations, "emergency dental care" includes, among other services not relevant here, "[i]mmediate and palliative proce-dures, including extractions if medically necessary, for relief of severe pain associated with an oral or maxillofacial condition." A.A.C. R9–22–207(B)(2).

¶ 36 Callen asked to have all eighteen of her remaining teeth removed because her teeth hurt. According to her testimony, her "teeth hurt every day, although she could not discern which teeth hurt." Dr. Kootman originally sought approval for the extraction of all of Callen's remaining teeth without differentiation. Based upon the review of Callen's dental x-rays by its dental consultant, Health Choice identified eight of Callen's teeth that showed shadowing on the root tip of the tooth, which indicated abscesses. It eventually approved extraction of these eight teeth. It denied the removal of the remaining teeth, however, because they did not "show a shaded area on the x-ray, therefore these teeth do not meet the criteria for extractions." Health Choice identified an objective clinical basis in eight teeth that were causing Callen "severe pain" and justified as emergency dental care the extraction of those eight teeth.

¶ 37 Dr. Kootman continued to base his analysis in terms of all of Callen's teeth. He prepared an affidavit that was introduced at the hearing. In it he continued to express his belief that "Linda Callen needs to have *all* of her remaining teeth extracted ... to alleviate further pain and swelling that she may be experiencing as a result of the disease and decay." Neither Dr. Kootman nor any other witness on behalf of Callen directly addressed Health Choice's distinction between approved and non-approved extractions based on the existence of abscesses. Dr. Kootman did testify in his affidavit, however, that "I have not found any significantly discerning factor that may be used to differentiate the necessity of extracting [the eight approved extractions] from the necessity of [the ten contested extractions]." Even assuming that means that Dr. Kootman saw abscesses in all of Callen's teeth, or that he saw abscesses in none of them, such testimony merely set up a conflict in the evidence between Health Choice's medical/dental review staff and Dr. Kootman. We cannot say that the AHCCCS Director's factual conclusion was not supported by substantial evi-

dence when he accepted the evidence of one of the professional witnesses over that of another. "Substantial evidence exists even if two inconsistent factual conclusions are supported by the record when the agency elects either possible conclusion." *Williams v. Tucson Unified Sch. Dist. No. 1,* 158 Ariz. 32, 35, 760 P.2d 1081, 1084 (App.1988).

¶ 38 Similarly, Health Choice offered testimony that alveoloplasty is a preparatory procedure for dentures, and Callen had provided no evidence that dentures were a medical necessity. The Director so found and Callen concedes that she has no medical necessity for dentures. That evidence alone is sufficient to constitute "substantial evidence" on which the Director could base his opinion.

■■■ ¶ 39 Dr. Kootman's affidavit does place a different perspective on the alveoloplasty. He indicates that Callen needed an alveoloplasty in conjunction with extractions to eliminate "sharp bone edges that, if left intact, will likely pierce the soft tissue of the opposing gums and tongue, causing further pain." While Dr. Kootman's testimony might establish that an alveoloplasty would be good preventive care after an extraction of multiple teeth that might leave sharp bone edges, and thus might be a service Callen "needed," AHCCCS does not cover dental necessity. It covers only emergency dental care. Emergency dental care only provides treatment to relieve existing severe pain. As Dr. Kootman requests the alveoloplasty based on its potential to relieve likely future pain, Dr. Kootman's affidavit does not establish the present existence of any oral condition causing severe pain. Thus, it establishes no present need for emergency dental care. By its very definition, preventive dental care is not emergency dental care.

¶ 40 Finally, the AHCCCS Director determined that Callen's request for general anesthesia was not justified. While Dr. Kootman did indicate that "a local anesthetic is insufficient to properly prevent further pain associated with the extractions of all remaining teeth," the extraction of all of the remaining teeth was not approved. Dr. Kootman did not offer any opinion whether a general anes-

**9.** Emergency dental care includes "[a]nesthesia appropriate for optimal patient management."

thetic would be required to extract the number of teeth approved by Health Choice. Health Choice, on the other hand, offered testimony that in light of the fact that neither the simultaneous extraction of eighteen teeth nor the alveoloplasty was approved, general anesthetic was not "absolutely medically necessary" because it was not optimal for patient management.[9] Again, we cannot say that the Director abused his discretion when he made a choice based on the opinion of an expert dental consultant who consulted with Health Choice's medical review staff.

## CONCLUSION

¶ 41 We hold that coverage of emergency dental services is permissible under the Act. We further hold that necessary dental services are not covered as outpatient procedures under A.R.S. § 36–2907(A)(2). We also determine that the Director's denial of the requested procedures here was supported by substantial evidence. We therefore affirm the superior court in affirming the AHCCCS Director's denial of the requested procedures.

CONCURRING: LAWRENCE F. WINTHROP and MAURICE PORTLEY, Judges.

