IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

TRENT W. BATTY, *Appellant*,

*v.*

ARIZONA MEDICAL BOARD, *Appellee*.

No. 1 CA-CV 21-0021
FILED 5-10-2022

Appeal from the Superior Court in Maricopa County
No.  LC 2019-000394-001
The Honorable Sigmund G. Popko, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Mitchell Stein Carey Chapman PC, Phoenix
By Andrew R. Breavington, Stephen W. Myers
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Mary DeLaat Williams
*Counsel for Appellee*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1        This appeal arises from the superior court's order affirming the Arizona Medical Board's decision that Dr. Trent Batty committed professional misconduct by engaging in sexual conduct with a patient, in violation of A.R.S. § 32-1401(27)(aa)(ii).  Dr. Batty argues the court erred in finding that (1) the statute does not include a specific sexual intent requirement, (2) the statute is not void for vagueness, and (3) the Board's decision is supported by substantial evidence.  Because the superior court did not err, we affirm.

**BACKGROUND**

¶2        Dr. Batty is a board-certified family medicine physician practicing in Arizona.  In February 2018, J.L. became a patient of Dr. Batty and was treated for mental health issues.  Both of them lived in the same rural town, and Dr. Batty had known J.L. for several years.  Soon after treatment began, they quickly developed a friendship, which included frequent text messages and social visits.  At the time, J.L. was 22 years old, and Dr. Batty was in his early forties.

¶3        J.L. began to feel troubled by the relationship and confided in his clergyman.  On J.L.'s behalf, the clergyman filed a complaint with the Board.  In the complaint, and as confirmed in a subsequent interview with the Board, J.L. alleged various instances of inappropriate behavior, including text messages from Dr. Batty that made J.L. uncomfortable.

¶4        In response, Dr. Batty disclosed his and J.L.'s text history.  Many of Dr. Batty's texts covered sexual topics and were unrelated to any treatment Dr. Batty was providing.  During the Board's investigation, Dr. Batty disclosed an incident with another male patient, C.S., also in his twenties.  Similar to his relationship with J.L., Dr. Batty and C.S. developed a social relationship.  On one occasion while Dr. Batty and C.S. were traveling together, Dr. Batty noticed that C.S. appeared to have an erection.  Dr. Batty then touched C.S.'s penis over the clothes.  Dr. Batty later

explained this was not sexually motivated and only intended to be a "juvenile prank."

¶5            In July 2018, Dr. Batty submitted to a polygraph examination. He answered "No" to questions about whether he had ever touched a patient for sexual purposes, including specific questions about J.L. and C.S. The test indicated he was truthful.  Later that month, Dr. Batty underwent a psychological evaluation, which indicated he was sexually attracted to women, and nothing suggested he suffers from sexual dysfunction or a desire disorder.  The evaluator opined that Dr. Batty had blurred professional lines, and "it was possible that there are other issues related to sexuality and intimacy that may have driven some of his behavior." Ultimately, however, the evaluator concluded Dr. Batty "did not engage in any predatory, coercive, or manipulative behavior which exploited his position of authority."  The evaluator also noted there was no reason to suspect Dr. Batty could not safely continue to practice medicine, although she recommended Dr. Batty undergo a professional course in recognizing boundaries.

¶6            As ordered by the Board, Dr. Batty had a second evaluation to determine his fitness to practice, conducted by Acumen Assessments.  In reviewing the text messages, Acumen determined "the nature of the text messages resembled those between two college students, which would be entirely inappropriate between a doctor and a patient."  Acumen opined that Dr. Batty was not a predator, explaining that the evidence revealed "poor professional boundaries and interpersonal judgment rather than sexual misconduct," but also recognized that the Board would ultimately "have to make a ruling regarding the finding of facts in this case."  Acumen recommended Dr. Batty enter a "robust Boundary Protection Plan," and in January 2019 he agreed to an interim consent order requiring him to undergo professional boundary training.

¶7            In June 2019, the Board formally interviewed Dr. Batty.  *See* A.R.S. § 32-1451(H) (giving the Board authority to conduct a formal interview if its investigation reveals potential merit).  He admitted touching C.S., but explained he "thought it was going to be funny, I was going to kid him about it.  You know, hey, looks like you are having too much fun here, ha."  He also acknowledged his text messages with J.L. were inappropriate. At the conclusion of the interview, the Board found that Dr. Batty participated in unprofessional conduct in violation of § 32-1401(27)(aa), which prohibits a physician from "[e]ngaging in sexual conduct with a

current patient."[1]  The discipline imposed included a formal reprimand, probation for two years, and compliance with any additional recommendations resulting from a pending re-evaluation.

**¶8**        In July 2019, Acumen conducted the re-evaluation, which included another polygraph test. The results showed that Dr. Batty truthfully reported he did not have sexual activity with patients since his first polygraph test. The evaluator opined that the tests indicated Dr. Batty demonstrated "the absence of any sexual misconduct," and he took "full responsibility for all the non-sexual boundary violations in the past with patients."

**¶9**        In August 2019, the Board issued its written decision memorializing its prior determination that Dr. Batty's actions constituted unprofessional conduct.  Dr. Batty filed a motion for rehearing, citing in part his July 2019 re-evaluation by Acumen.  The Board denied the motion.

**¶10**        Dr. Batty appealed to the superior court, asserting in part that the Board's decision was not supported by substantial evidence because the Board's own experts opined that Dr. Batty's behavior was not sexually motivated.  Alternatively, he argued § 32-1401(27)(aa) was void for vagueness.  In a detailed ruling, the superior court affirmed the Board's decision under the specific subsection § 32-1401(27)(aa)(ii), which defines sexual conduct to include words or actions of a sexual nature.  The court explained that "the legislature determined that proper professional boundaries between a doctor and a patient included prohibiting a doctor from engaging in any conduct, either physical or verbal, of a sexual nature regardless of the doctor's lack of a sexual *mens rea*."  The court also rejected Dr. Batty's vagueness challenge and concluded that substantial evidence supported the Board's decision that he engaged in physical and verbal acts that were plainly sexual in nature, as commonly defined.  Dr. Batty timely appealed to this court, and we have jurisdiction under A.R.S. § 12- 2101(A)(1).

---

[1]        The Board also found that Dr. Batty's unprofessional conduct included violations of A.R.S. § 32-1401(27)(e) ("Failing or refusing to maintain adequate records on a patient") and 27(r) ("Committing any conduct or practice that is or might be harmful or dangerous to the health of the patient or the public").  Neither of those violations were challenged in the superior court.

**DISCUSSION**

¶11        The superior court must affirm an agency action unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(F). The superior court reviews questions of law decided by the agency de novo, "without deference to any previous determination that may have been made on the question by the agency." *Id.*; *see also Pima Cnty. v. Pima Cnty. Law Enf't Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 13 (2005). "We engage in the same process as the superior court when we review its ruling affirming an administrative decision." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 12 (App. 2009).[2]

## A.        Sexual Intent/Motivation

¶12        Dr. Batty argues § 32-1401(27)(aa)(ii) must be read to require that a physician act with "sexual intent" before the Board can impose discipline for engaging in conduct of a sexual nature. To determine a statute's meaning, we look first to its text. *See State v. Jurden*, 239 Ariz. 526, 530, ¶ 15 (2016). If it is unambiguous, we apply the text as written without employing other methods of statutory interpretation. *Id.* When construing a particular provision, we consider "the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019).

¶13        The Board has the authority to discipline a physician for "unprofessional conduct," A.R.S. §§ 32-1403(A)(5), 32-1451(A), which includes "[e]ngaging in sexual conduct with a current patient or with a former patient within six months after the last medical consultation," § 32-1401(27)(aa). "[S]exual conduct" is defined by statute to include, among other things, "[m]aking sexual advances, requesting sexual favors or

---

[2]        Historically, Arizona's courts have afforded deference to the factual findings of an administrative agency. *See, e.g., Gaveck*, 222 Ariz. at 436, ¶ 11. But the legislature has now indicated otherwise, *see* § 12-910(F), stating that "the court shall decide all questions of fact without deference to any previous determination that may have been made on the question by the agency." 2021 Ariz. Legis. Serv. Ch. 281 (S.B. 1063). This amendment became effective in September 2021, after the superior court issued its ruling and after briefing in this appeal. *See* A.R.S. § 12-910 (2021). Neither party has filed a notice of supplemental authority or sought to provide additional briefing on the effect, if any, of the amendment on this case. In any event, we need not decide whether it applies here because the essential facts are undisputed.

*engaging in any other verbal conduct or physical contact of a sexual nature.*" § 32-1401(27)(aa)(ii) (emphasis added).

**¶14** In affirming the Board's decision, the superior court found that § 32-1401(27)(aa)(ii) "does not require proof that [a physician] acted with a sexual *mens rea*." Dr. Batty argues this was error, asserting a common sense and plain reading of § 32-1401(27)(aa)(ii) requires that a physician act with a specific, sexual intent. He contends that "engage" is an action verb, which implies intentionality, and therefore a person cannot "engage" in conduct or contact of a sexual nature without sexual motivation.

**¶15** The common definitions of "engage," as applied here, include: "to begin and carry on an enterprise or activity." *Engage*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014); *see State v. Takacs*, 169 Ariz. 392, 397–98 (App. 1991) (noting we may look to dictionary definitions to determine a term's meaning). A reasonable construction of the term "engage" in the context of § 32-1401(27)(aa)(ii) means that the physician intended to participate in certain conduct. But nothing in the language of § 32-1401(27)(aa)(ii) requires proof that such conduct was sexually motivated. *Cf. State v. Holle*, 240 Ariz. 300, 303, ¶¶ 17–18 (2016) (declining to infer that sexual motivation is an element in child molestation and sexual abuse offenses because, in part, the plain language of the underlying statute does "not mention, imply, or require sexual motivation"). Had the legislature intended such a requirement, we presume it would have made that intention plain in the statute. *See State v. Hood*, 251 Ariz. 57, 60, ¶ 9 (App. 2021).

**¶16** Moreover, other portions of this same statute show that the legislature will include an express intent requirement when it wishes to do so. For example, within a related subsection of the same statute, the legislature included an intent requirement, stating that a physician engages in sexual conduct by "*[i]ntentionally* viewing a completely or partially disrobed patient in the course of treatment if the viewing is not related to patient diagnosis or treatment under current practice standards." A.R.S. § 32-1401(27)(aa)(iii) (emphasis added). The legislature's inclusion of an express intent requirement under subsection (aa)(iii) weighs against reading a specific sexual intent requirement into subsection (aa)(ii). *See Garcia v. Butler ex. rel Cnty. of Pima*, 251 Ariz. 191, 195, ¶ 16 (2021) ("The legislature's use of restrictive language in one section of the statute but not in the other section indicates that it intended the restriction to apply only where it was designated."); *see also State v. Burgess*, 245 Ariz. 275, 279, ¶ 15 (App. 2018) ("[W]e will not 'judicially impose a requirement the legislature has intentionally chosen not to require.'" (citation omitted)).

¶17 Further, we are not persuaded by Dr. Batty's reliance on other areas of the law addressing sexual misconduct. He argues that, because sexual harassment law under Title VII of the Civil Rights Act requires a showing of specific sexual intent, § 32-1401(27)(aa)(ii) must be construed the same way. *See* 42 U.S.C. § 2000e-2(a) (prohibiting employer discrimination on the basis of sex). However, the United States Supreme Court has specifically stated that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Dr. Batty also asserts that Arizona's criminal laws governing sex crimes require a specific sexual intent. *See, e.g.*, A.R.S. § 13-1404(A) (sexual abuse expressly requires intentionally or knowingly engaging in sexual contact). But when our statutes have been silent on the matter, we have declined to add either sexual intent or motivation as a necessary element. *See State v. Simpson*, 217 Ariz. 326, 328–29, ¶¶ 18–19 (App. 2007) (holding that the statute governing child molestation did not require the state to prove the act was motivated by sexual intent); *State v. Sandoval*, 175 Ariz. 343, 347 (App. 1993) (holding that the statute governing indecent exposure did not require a showing that defendant was motivated by sexual intent).

¶18 Because the statute is unambiguous, we reject Dr. Batty's invitation to employ other methods of statutory construction, such as the rule of lenity, which might be applied in narrow circumstances, but only in in criminal cases. *See Taylor v. Cruikshank*, 214 Ariz. 40, 46, ¶ 25 (App. 2006) (explaining that the rule may apply "in a criminal case" involving an ambiguous statute such that doubts of statutory construction are resolved in favor of the defendant). We affirm the superior court's conclusion that § 32-1401(27)(aa)(ii) does not require that the physician's conduct be motivated by a specific sexual intent, at least when the Board considers imposing discipline under the theory that the physician engaged in conduct of a sexual nature.

## B. Vagueness

¶19 Alternatively, Dr. Batty argues that if § 32-1401(27)(aa)(ii) does not include a mens rea requirement, then it must be void for vagueness. We review the constitutionality of a statute de novo but "presume that the statute is constitutional and must construe it, if possible, to give it a constitutional meaning." *State v. McMahon*, 201 Ariz. 548, 550, ¶ 5 (App. 2002). Dr. Batty "has the heavy burden of overcoming that presumption." *Id.* "A statute is unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit instructions for those who will

apply it." *Id.* at 551, ¶ 7; *see also Golob v. Ariz. Med. Bd. of the State*, 217 Ariz. 505, 512–13, ¶ 28 (App. 2008). Additionally, "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment," and we must take into consideration the severity of the penalty. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

**¶20** Dr. Batty argues that "[w]ithout a specific *mens rea* requirement, a [physician] is not able to discern exactly what behavior the statute prohibits." He contends that a person of ordinary intelligence cannot discern whether the statute prohibits any conduct that may be perceived as sexual, or if it only prohibits conduct "sexually motivated or intended for a sexual purpose." Noting the opposing positions pressed by counsel at oral argument and the significant time spent addressing statutory interpretation, Dr. Batty contends the statute must be vague, given that "three knowledgeable and experienced legal professionals could not agree on its meaning after significant debate." Given the severity of the penalty, Dr. Batty also argues we should apply a stricter form of the vagueness test.

**¶21** We are not persuaded. To avoid unconstitutional vagueness, a statute need not "be drafted with absolute precision," and must only "convey a definite warning of the proscribed conduct." *McMahon*, 201 Ariz. at 551, ¶ 8 (quoting *Fuenning v. Super. Ct. ex rel. Maricopa Cnty.*, 139 Ariz. 590, 598 (1983)); *see also Golob*, 217 Ariz. at 513, ¶ 29. As already explained, the plain language of § 32-1401(27)(aa)(ii) only applies to non-accidental conduct, and does not require a specific sexual intent. Thus, Dr. Batty's primary concern that physicians are unable to discern whether the statute prohibits conduct based on intent or perception is unfounded.

**¶22** Further, § 32-1401(27)(aa)(ii) applies only to behavior that is "of a sexual nature." "Sexual" is commonly defined as "of, relating to, or associated with sex or the sexes." *Sexual*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014). "Nature," as relevant here, is defined as "the inherent character or basic constitution of a person or thing." *Nature*, Merriam-Webster's Collegiate Dictionary (11th ed. 2014). As explained by the superior court, these standard definitions are sufficient to give physicians "notice of what constitutes unprofessional conduct." *See State v. Johnson*, 243 Ariz. 41, 44, ¶ 9 (App. 2017) (explaining that a statute is not void for vagueness simply because it has undefined terms, and in such situations, "[w]e may also look to dictionary definitions, both legal and otherwise, to determine a word's meaning"). And contrary to Dr. Batty's assertions, opposing interpretations offered in litigation do not compel a

finding that a statute is unconstitutionally vague. *See, e.g.*, *Glazer v. State*, 244 Ariz. 612, 614, ¶ 12 (2018) ("A statute is not ambiguous merely because the parties disagree about its meaning."). Even assuming we must apply a stricter test of vagueness given the severity of the potential penalty, the language of § 32-1401(27)(aa)(ii) is sufficient to forewarn physicians of prohibited conduct. We affirm the superior court's determination that § 32-1401(27)(aa)(ii) is not void for vagueness.

### C. Substantial Evidence

**¶23** Dr. Batty argues the Board's decision is not supported by substantial evidence, which is a question of law subject to our de novo review. *See Gaveck*, 222 Ariz. at 436, ¶ 12. He contends the Board could not properly determine whether he engaged in sexual conduct under § 32-1401(27)(aa)(ii) without first deciding whether his conduct was sexually motivated. He posits that such a determination necessarily involves principles of behavioral and social science, and thus the Board could not evaluate his conduct without relying on the expert opinions. And because the experts unanimously concluded his behavior was not sexually motivated, Dr. Batty concludes the Board erred in finding he committed sexual conduct. But as explained above, because sexual motivation is not a requirement under § 32-1401(27)(aa)(ii), the Board was not required to rely on or defer to the experts' opinions on Dr. Batty's motivations.

**¶24** Dr. Batty also argues, as a matter of law, that the Board could not reach a conclusion contrary to the expert opinions. He points out that Acumen, in its first report, opined that the evidence pushed "in the direction of poor professional boundaries and interpersonal judgment rather than sexual misconduct." Then, in its second report, Acumen characterized Dr. Batty's behavior as "non-sexual boundary violations," and opined he was "demonstrating the absence of any sexual misconduct." Given these findings, Dr. Batty asserts the Board's contrary decision was not supported by the evidence. He also contends that reliance on expert opinions is essential in ensuring the statute is applied uniformly, arguing that reliance on the victim's or the Board's subjective opinions invites random results.

**¶25** The purpose of these expert evaluations, however, was not to decide whether Dr. Batty had committed professional misconduct, but rather to determine whether Dr. Batty was fit to practice. And more importantly, whether Dr. Batty's actions were "sexual in nature" was a legal determination for the Board. In fact, Acumen itself acknowledged that the Board needed to decide whether Dr. Batty's actions constituted misconduct.

*Cf. Webb v. Omni Block, Inc.*, 216 Ariz. 349, 353–54, ¶¶ 14, 17 (App. 2007) (explaining that expert opinions are often excluded as evidence when they tell the factfinder how to decide the case, or when couched as legal conclusions). Moreover, whether a physician's conduct in a particular situation is of a sexual nature is not so complicated a question as to require expert deference. As noted, the standard definitions of "sexual" and "nature" offer sufficient guidance to laypersons to understand the meaning of those terms. Simply put, the Board members needed no expert opinions to decide whether Dr. Batty's conduct was sexual. He admitted to (1) touching a patient's penis because it was erect; and (2) sending J.L. text messages concerning sex, masturbation, and ejaculation. As the superior court properly concluded, this conduct is sexual in nature and therefore substantial evidence supports the Board's determination.

**¶26**        Finally, Dr. Batty asserts that even if the agency decision is supported by substantial evidence, "it may nonetheless reflect arbitrary and capricious action." *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974); *see also Am. Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013, 1016 (9th Cir. 1984) ("[E]ven though an agency decision may have been supported by substantial evidence, where other evidence in the record detracts from that relied upon by the agency we may properly find that the agency rule was arbitrary and capricious."). However, Arizona courts interpreting Arizona administrative law have consistently held that an agency decision is not arbitrary and capricious if it is supported by substantial evidence. *See, e.g., Ariz. Cannabis Nurses Ass'n v. Ariz. Dep't of Health Servs.*, 242 Ariz. 62, 65, ¶ 8 (App. 2017); *Callen v. Rogers*, 216 Ariz. 499, 502, ¶ 9 (App. 2007); *Smith v. Ariz. Long Term Care Sys.*, 207 Ariz. 217, 220, ¶ 14 (App. 2004). Because Dr. Batty provides no compelling reason for abandoning this well-established interpretation of Arizona's administrative law, we do not disturb it here.[3]

---

[3]        Dr. Batty cites several federal cases interpreting federal administrative law for the proposition that an agency decision is arbitrary and capricious whenever it contradicts the opinion of its own expert. *See Defs. of Wildlife v. Babbitt*, 958 F. Supp. 670, 685 (D.D.C. 1997); *N. Spotted Owl v. Hodel*, 716 F. Supp. 479, 483 (W.D. Wash. 1988); *Am. Tunaboat Ass'n*, 738 F.2d at 1017. Those cases are not persuasive here, as each of them involved complex factual questions about wildlife populations. In any event, Dr. Batty's unsuccessful defense hinges on the interpretation of what constitutes sexual misconduct, a question of law.

## CONCLUSION

**¶27**　　　We affirm the superior court's ruling that the Board's decision was not contrary to law, and it was supported by substantial evidence. Because Dr. Batty has not prevailed on the merits of this appeal, we deny his request for attorneys' fees and costs under A.R.S. § 12-348.



AMY M. WOOD • Clerk of the Court
FILED:　　AA