In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3710

SANDRA M. BONTRAGER, on her own behalf and
on behalf of a class of those similarly situated,

*Plaintiff-Appellee,*

*v.*

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION,
MICHAEL A. GARGANO, and PATRICIA CASANOVA,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:11-cv-216—**Philip P. Simon**, *Chief Judge.*

ARGUED JUNE 4, 2012—DECIDED SEPTEMBER 26, 2012

Before KANNE, WOOD, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* On May 5, 2011, Sandra M.
Bontrager filed a putative class action complaint chal-
lenging Indiana's $1,000 annual limit for dental services
covered by Medicaid. The district court granted
Bontrager's request for a preliminary injunction, holding

that Indiana is required to cover all medically necessary dental services, irrespective of the monetary cap. We affirm.

## I. BACKGROUND

The Medicaid program, 42 U.S.C. § 1396 *et seq.*, allows states to provide federally subsidized medical assistance to low-income individuals and families. *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003). "Although participation in Medicaid is optional, once a state has chosen to take part . . . it must comply with all federal statutory and regulatory requirements." *Miller ex rel. Miller v. Whitburn*, 10 F.3d 1315, 1316 (7th Cir. 1993). Indiana participates in the Medicaid program and is therefore bound by its rules and regulations. *See* Ind. Code § 12-15-1-1 *et seq.*

Under federal Medicaid law, "[a] State plan for medical assistance must . . . provide . . . for making medical assistance available . . . to all [eligible] individuals." 42 U.S.C. § 1396a(a)(10). "Medical assistance" includes "dental services," but coverage for these services is not required. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(10). Under its Medicaid plan, Indiana elects to cover certain dental services, *see* 405 Ind. Admin. Code 5-14-1 *et seq.*, that are "medically reasonable and necessary" and not listed as "noncovered" or otherwise excluded, *id.* at 5-2-17(1)-(2). Whether a service is "medically reasonable and necessary" is determined by utilizing "generally accepted standards of medical or professional practice."

*Id.* at 5-2-17(1). Even if medically necessary, "covered services routinely provided in a dental office will be limited to one thousand dollars ($1,000) per recipient, per twelve (12) month period." *Id.* at 5-14-1(b). This $1,000 limit, a cost-cutting measure for Indiana, went into effect on January 1, 2011.

Bontrager is an Indiana Medicaid recipient in need of significant dental services, including two endosteal implants and two implant abutments for her lower jaw. Bontrager sought payment of these services through Medicaid, but her claim, although covered and medically necessary, was denied to the extent her requested treatment exceeded the $1,000 annual limit. Bontrager's medically necessary procedures, considered separately or in combination, exceed this cap and she is unable to pay for the services on her own.

Bontrager's lawsuit alleges that the Indiana Family and Social Services Administration, which administers Indiana's Medicaid program, and its individually named administrators (collectively, the "State"), violated state and federal Medicaid laws by instituting the $1,000 annual cap on dental services, even when such services are covered and medically necessary. Bontrager's federal claim seeks injunctive and declaratory relief under 42 U.S.C. § 1983 for the State's violation of 42 U.S.C. § 1396a(a)(10). On November 4, 2011, the district court granted a preliminary injunction, preventing the State from enforcing its $1,000 cap on dental services. This matter is now before us on interlocutory appeal. *See* 28 U.S.C. § 1292(a)(1).

## II. ANALYSIS

The State presents two issues for our consideration: (1) whether Bontrager has a private right of action under 42 U.S.C. § 1983 for a violation of 42 U.S.C. § 1396a(a)(10), and (2) whether the district court erred in granting the preliminary injunction. We consider each of these questions in turn.

### A. Private Right of Action

First we must consider, as the district court did, whether Bontrager has a private right of action to challenge Indiana's $1,000 annual limit on dental services covered by Medicaid under 42 U.S.C. § 1983. "In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Generally, we consider three factors to determine if a statute creates an enforceable right: (1) whether Congress intended the provision to benefit the plaintiff, as evidenced by "rights-creating" language, *see id.*; (2) whether the right is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the States, such that the provision is "couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 340-41.

Bontrager's § 1983 claim is based upon an implied right of action conferred by the federal Medicaid statute, 42 U.S.C. § 1396a(a)(10)(A). In *Miller*, we considered whether this same provision creates an enforceable federal right under § 1983. 10 F.3d at 1319. We answered that question in the affirmative, and held that § 1396a(a)(10)(A) satisfies the standard set forth in *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 509 (1990), and permitted the plaintiff to challenge Wisconsin's classification of a liver-bowel transplant as "experimental." 10 F.3d at 1319-20. In *Wilder*, the Supreme Court determined that a portion of the Medicaid Act governing reimbursement of health care providers was enforceable pursuant to § 1983. 496 U.S. at 509-10. In doing so, the Court found that the provision at issue was intended to benefit the putative plaintiff, the statute created a binding obligation on the governmental unit, and the plaintiff's interests were not too vague and amorphous for courts to enforce. *Id.* at 509.

The State argues that *Miller* no longer governs because the post-*Wilder* cases of *Blessing* and *Gonzaga* changed the standard for determining whether a private right of action exists. Although we have acknowledged that *Gonzaga* "may have taken a new analytical approach," *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 456 (7th Cir. 2007), *Wilder* has not been overruled, *id.*; *cf. State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents."). Further, post-*Blessing* and *Gonzaga*, several circuit courts have held that the Medicaid provision at issue creates an enforceable federal right.

*See, e.g., Watson v. Weeks*, 436 F.3d 1152, 1159-61 (9th Cir. 2006); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180,189-92 (3d Cir. 2004); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 604-06 (5th Cir. 2004). We find the reasoning of these courts persuasive and reaffirm *Miller*'s holding. Accordingly, Bontrager has an enforceable federal right capable of redress through § 1983, and her claim may proceed.

### B. Preliminary Injunction

We next consider whether the district court properly granted Bontrager's motion for a preliminary injunction. On appeal, we review the district court's grant of a preliminary injunction by considering its legal rulings *de novo*, its factual determinations for clear error, and its balancing of the factors for an abuse of discretion. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009). To justify a preliminary injunction, Bontrager must show that she is "likely to succeed on the merits, . . . likely to suffer irreparable harm without the injunction, that the harm [she] would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and that the injunction is in the public interest." *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

To determine Bontrager's likelihood of success, we must take a closer look at the applicable state and federal Medicaid statutes and regulations. As noted previously, Indiana voluntarily participates in the Medi-

caid program and provides Medicaid coverage for dental services. Ind. Code § 12-15-5-1. This coverage includes only those dental services listed in Indiana's Administrative Code. 405 Ind. Admin. Code 5-14-1(a), 5-14-2. The dental service must be a "medically reasonable and necessary service," which is defined as "a covered service . . . that is required for the care or well being of the patient and is provided in accordance with generally accepted standards of medical or professional practice." *Id.* at 5-2-17.[1] To be reimbursable, a service must be "medically reasonable and necessary," a determination made by utilizing "generally accepted standards of medical or professional practice," *id.* at 5-2-17(1), and not listed as a noncovered service or otherwise excluded from coverage, *id.* at 5-2-17(2).

Neither party disputes that the State is required to provide Medicaid coverage for medically necessary treatments in those service areas that the State opts to provide such coverage (such as dental services). The district court thoroughly discussed this issue, *Bontrager v. Ind. Family & Soc. Servs. Admin.*, 829 F. Supp. 2d 688, 696-98 (N.D. Ind. 2011), and its opinion is well-supported by state and federal case law. *See, e.g.*, *Beal v.* Doe, 432 U.S. 438, 444 (1977) ("[S]erious statutory questions

---

[1] A "covered service" is defined as "a service provided by a Medicaid provider for a Medicaid recipient for which payment is available under the Indiana Medicaid program subject to the limitations of [405 Ind. Admin. Code 5]." 405 Ind. Admin. Code 5-2-6.

might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage . . . ."); *Lankford v. Sherman*, 451 F.3d 496, 511 (8th Cir. 2006) ("While a state has discretion to determine the optional services in its Medicaid plan, a state's failure to provide Medicaid coverage for non-experimental, medically-necessary services within a covered Medicaid category is both per se unreasonable and inconsistent with the stated goals of Medicaid."); *Thie v. Davis*, 688 N.E.2d 182, 186 (Ind. Ct. App. 1997) (Indiana Medicaid statute's "language is unequivocal" such that "medically necessary treatment must be covered.").

   But even though a state is required to cover all medically necessary treatments in those service areas in which the state opts to provide coverage, federal regulations grant a state considerable leeway in carrying out its plan. Under those regulations, a state's Medicaid plan must "specify the amount, duration, and scope of each service that it provides," 42 C.F.R. § 440.230(a), and "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose," *id.* § 440.230(b). *Accord* Ind. Code § 12-15-21-3(3) (permitting the State to establish limitations "consistent with medical necessity concerning the amount, scope, and duration of the services and supplies to be provided"). Yet the State "may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). The regulations do not define "utilization control procedures."

The State's primary argument is that Medicaid recipients in need of medically reasonable and necessary dental services over $1,000 are not categorically excluded from receiving such treatments; instead, their treatments are merely subject to an appropriate, lawful limitation put in place by the State. Thus, the State asserts it is providing the necessary coverage required under Medicaid. In this way, the State believes the present case differs from other Indiana Medicaid cases involving the categorical exclusion of medically necessary treatments. In *Thie*, for instance, the Indiana Court of Appeals examined the State's exclusion of dentures from dental service coverage, and held that the exclusion was inconsistent with the State's definition of medical necessity. 688 N.E.2d at 188. Because "federal law requires that medically necessary dental treatments be covered," *id.* at 186, and the State's dentures regulation excluded medically necessary treatment, the court determined that the regulation was invalid, *id.* at 188. *Accord Coleman v. Ind. Family & Soc. Servs. Admin.*, 687 N.E.2d 366, 369 (Ind. Ct. App. 1997) (regulation excluding partial dentures was invalid where treatment was deemed medically necessary). Similarly, in *Davis v. Schrader*, the court held that the exclusion of orthopedic shoes was inconsistent with the State's definition of medical necessity, which required the item to be "necessary for the treatment of an illness or injury or to improve the functioning of a body member." 687 N.E.2d 370, 373-74 (Ind. Ct. App. 1997) (*quoting* 405 Ind. Admin. Code 1-6-12(h)(1)(A) (repealed)).

In contrast to *Thie*, *Coleman*, and *Davis*, the State asserts that the $1,000 cap does not prevent coverage of any

medically necessary dental procedures, but operates as an appropriate limitation authorized by 42 C.F.R. § 440.230 and Ind. Code § 12-15-21-3(3). The district court found problems with this reasoning, noting that the cap conflicts with our traditional understanding of insurance coverage. *Bontrager*, 829 F. Supp. 2d at 699 ("This is a bizarro-world notion of insurance coverage: once the insurance provider (the State) meets the initial deductible ($1,000), the insured is left covering all the remaining costs. Under any commonsense notion, this is not insurance 'coverage.'"). We agree with the district court that the cap prevents the State from providing coverage for all medically necessary services, and partial payment for such services does not constitute "some coverage," as the State would have us believe. To illustrate, a medically necessary procedure that costs $1,200 is not "covered" since the State's cap prevents full reimbursement to the provider. Although the State agrees to pay $1,000, an indigent individual will likely be unable to pay the remaining $200 and will have to go without the procedure. The State's monetary contribution has no effect (i.e., the State ends up paying nothing) and the Medicaid recipient is left without recourse. And if the indigent individual has already used a portion of her $1,000 allotment toward other dental services, she would be required to come up with even more money to pay for the procedure.

According to the State's own documentation, the effective rates for at least three dental procedures exceed the $1,000 cap and are therefore—like the treatments in *Thie*, *Coleman*, and *Davis*—categorically excluded from

coverage. *See* Ind. Health Coverage Programs, IHCP bulletin, BT201012 (April 15, 2010), *available at* http://www.indianamedicaid.com/ihcp/Bulletins/BT2010 12.pdf. For instance, a "Mandible—closed reduction" procedure costs $1,247.59, a "Mandible—open reduction" procedure costs $2,396.14, and a "Facial bones—complicated reduction" procedure costs $1,114.35. *Id.* Because of the $1,000 cap, the State's Medicaid program will not cover these procedures, despite their medical necessity. *Accord Montoya v. Johnston*, 654 F. Supp. 511, 514 (W.D. Tex. 1987) ("[T]he $50,000 Medicaid cap is arbitrary and unreasonable in that it functionally excludes the Plaintiffs' [$200,000] liver transplants from medicaid coverage."). As noted previously, even if the State offers to pay $1,000 toward these treatments, a Medicaid recipient is effectively precluded from receiving such treatments because the leftover balance remains unpaid.

In finding that the $1,000 cap does not provide coverage for all medically necessary procedures, it is important to distinguish this case from other cases which have upheld similar numerical constraints. For instance, in *Charleston Memorial Hospital v. Conrad*, the Fourth Circuit upheld South Carolina's reductions in inpatient and outpatient hospital coverage. 693 F.2d 324, 330 (4th Cir. 1982). Medicaid recipients were limited to twelve inpatient visits and eighteen outpatient visits per year. *Id.* The Fourth Circuit held that the limitations would still meet the needs of most eligible recipients, and therefore, were sufficient to satisfy federal law. *Id.* Similarly, in *Curtis v. Taylor*, the Fifth Circuit upheld Florida's limitation on reimburse-

ment for up to three physician visits per month (except in emergency medical situations). 625 F.2d 645, 652 (5th Cir. 1980). The court held that Florida could limit services "based upon a judgment of degree of medical necessity so long as it does not discriminate on the basis of the kind of medical condition that occasions the need." *Id.* Finally, in *Grier v. Goetz*, Tennessee's five-prescription-per-month limitation was upheld because "the evidence presented does not demonstrate that most [Medicaid] enrollees will not receive medically necessary treatment or that their access to such treatment will be severely curtailed as a result of the [limitation]." 402 F. Supp. 2d 876, 913 (M.D. Tenn. 2005).

In contrast to *Charleston Memorial*, *Curtis*, and *Grier*, the $1,000 cap in this case denies coverage for medically necessary services outright by functionally excluding certain procedures. The cap is not in any way based on degree or consideration of medical necessity. Moreover, in those cases, the limitations were "soft," i.e., exceptions could be granted. *Charleston Memorial*, 693 F.2d at 327 n.5 (exceptions for "certain vital health care needs"); *Curtis*, 625 F.2d at 652 (exceptions for emergency services); *Grier*, 402 F. Supp. 2d at 914 (exceptions on case-by-case basis and shortlist of exempt drugs). Here, the $1,000 cap applies without exception to all medically necessary, routine dental services. *See* 405 Ind. Admin. Code 5-14-1(b). Thus, even though the State asserts that the $1,000 cap still serves over 99% of the State's Medicaid recipients, the dental services provided are not "sufficient in amount, duration, and scope to reasonably achieve [their] purpose." 42 C.F.R. § 440.230(b).

The purpose of Medicaid dental services is to provide reimbursement for routine dental treatments to medically needy, indigent individuals. But, in light of the $1,000 cap, these services are, in some cases, completely excluded from coverage. As the district court noted, "when a service goes completely unprovided, it has obviously not been provided in an amount sufficient to achieve its purpose." *Bontrager*, 829 F. Supp.2d at 703.

We also disagree with the State's classification of the $1,000 cap as a "utilization control procedure." As noted previously, this term is undefined in the state and federal regulations. But cases from other jurisdictions have offered various interpretations of the term. First, *Grier* held that a five-prescription-per-month limitation was a proper utilization control procedure, 402 F. Supp. 2d at 911, but we have already distinguished *Grier*'s limitation from the $1,000 cap. Other courts hold that a prior authorization system is an acceptable utilization control procedure. *See, e.g.*, *Ladd v. Thomas*, 962 F. Supp. 284, 294 (D. Conn. 1997) (*citing Jeneski v. Myers*, 209 Cal. Rptr. 178, 187 (Cal. Ct. App. 1984)). One state court has held that a points system used to determine the medical necessity of orthodontic treatment is a reasonable utilization control procedure. *Semerzakis v. Comm'r of Soc. Servs.*, 873 A.2d 911, 929 (Conn. 2005). The Southern District of New York notes that a state is permitted to use reasonable utilization control procedures "to limit unnecessary utilization of Medicaid services," but an arbitrary cap on personal home-care services, applicable only to new Medicaid recipients, was not an appropriate utilization control procedure.

*DeLuca v. Hammons*, 927 F. Supp. 132, 136 (S.D.N.Y. 1996). Finally, the Eastern District of Michigan has held that "[p]rocedures to promote utilization control cannot justify precluding funding of medically necessary procedures." *Allen v. Mansour*, 681 F. Supp. 1232, 1239 (E.D. Mich. 1986).

None of these cases indicate that a state's monetary cap on medically necessary services constitutes a reasonable utilization control procedure. The State's $1,000 cap is certainly not a prior authorization process, or similarly designed to control access, prevent fraud, or streamline efficiency. Nor is it used as a resource to determine the medical necessity of a procedure, as in *Semerzakis*. We have already determined that the cap excludes medically necessary treatment, so the cap cannot be designed to limit only medically unnecessary coverage. Whatever the interpretation of "utilization control procedure," we do not believe implementation of such a procedure allows a state to shirk its primary obligation to cover medically necessary treatments. Accordingly, the State's monetary cap, which serves to exclude medically necessary treatment, is not a utilization control procedure.

Having determined that Bontrager has some likelihood of success on the merits, we turn to the remaining preliminary-injunction considerations. "These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546. We agree with the district court that Bontrager and similarly situated indi-

viduals will likely suffer irreparable harm if the injunction is not granted, as they would be denied medically necessary care. *Bontrager*, 829 F. Supp. 2d at 705 (citing cases); *accord Camacho v. Tex. Workforce Comm'n*, 326 F. Supp. 2d 794, 802 (W.D. Tex. 2004); *Olson v. Wing*, 281 F. Supp. 2d 476, 486 (E.D.N.Y.) ("The award of retroactive benefits cannot ameliorate the harm suffered if such a recipient should be forced by circumstances to [forgo] treatment or medication."), *aff'd*, 66 F. App'x 275 (2d Cir. 2003).

In light of the irreparable harm facing Bontrager and her likelihood of success on the merits, the balance of the equities likely also favors Bontrager. In making this determination, we consider whether "the harm to the defendant would substantially outweigh the benefit to the plaintiff." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 789 (7th Cir. 2011). The State's potential budgetary concerns are entitled to our consideration, but do not outweigh the potential harm to Bontrager and other indigent individuals, especially when the State's position is likely in violation of state and federal law. *See Tallahassee Mem'l Reg'l Med. Ctr. v. Cook*, 109 F.3d 693, 704 (11th Cir. 1997) (budgetary constraints do not permit a state to evade Medicaid legal requirements); *Ark. Med. Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 531 (8th Cir. 1993) ("[T]he state may not ignore the Medicaid Act's requirements in order to suit budgetary needs.").

The same reasoning applies to our consideration of the public interest. The Medicaid statute was designed to pay for the healthcare costs of "the most needy in the country." *Schweiker v. Hogan*, 457 U.S. 569, 590 (1982).

Although we are mindful of potential budgetary concerns, these interests do not outweigh Medicaid recipients' interests in access to medically necessary health care. *See, e.g.*, *Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1098 (9th Cir. 2010) ("[W]e have repeatedly recognized that individuals' interests in sufficient access to health care trump the State's interest in balancing its budget."), *vacated on other grounds*, *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204 (2012). The State cautions that it may end coverage of all dental services under its Medicaid plan if the $1,000 cap is no longer in place. Thus, this lawsuit may result only in a pyrrhic victory for the plaintiff. But the State's likely violation of state and federal law cannot be ignored in order to preserve the status quo. Moreover, there are other avenues by which the State can limit its exposure to significant Medicaid costs. *See, e.g.*, *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1255 (11th Cir. 2011) ("A state may also limit required Medicaid services based upon its judgment of degree of medical necessity so long as such limitations do not discriminate on the basis of the kind of medical condition."); *Coleman*, 687 N.E.2d at 368 (the State may limit coverage "by narrowing the definition of medical necessity").

## III. CONCLUSION

Because the balance of the factors weighs in favor of granting a preliminary injunction, we AFFIRM the judgment of the district court.