NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2015[*]
Decided March 27, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1088

| | |
|---|---|
| WILLIS BAIRD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 13-cv-0376-MJR-SCW |
| | |
| MARC HODGE, *et al.*, | Michael J. Reagan, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

Illinois prisoner Willis Baird, a former police officer, is incarcerated at the Lawrence Correctional Center. Baird has sued several Lawrence employees under 42 U.S.C. § 1983, claiming in part that they failed to protect him from a cellmate's assault. In that litigation, which remains pending, Baird sought a preliminary injunction that would compel his transfer to a different prison or placement in protective custody. The district court declined that preliminary relief, and Baird filed this interlocutory appeal

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

challenging the court's ruling. But he did not show that he likely would suffer irreparable harm without the injunction, so we uphold the district court's decision.

According to Baird, his experience as an undercover police officer first placed him in danger in June 2012 while he was at Hill Correctional Center. Two inmates there had learned he was an ex-police officer and confronted him with that knowledge. Baird immediately told a guard and was placed in isolation for 30 days. He was then transferred to Lawrence, but so were the two inmates who had confronted him. Baird, concerned that these inmates were disclosing his past to others at Lawrence, began submitting grievances requesting protective custody. Those requests were denied.

In March 2013 Baird's cellmate at Lawrence, Chauntee Meeks, attacked him with a plastic stool, choked him, and punched him after discovering Baird's former occupation. Baird asserts that this attack left him with a broken nose; cuts on his left shoulder, arm, and leg; a stiff neck; and "two big lumps" on his head. Baird and Meeks were separated, and Baird was placed in segregation for fighting back. He still felt unsafe and renewed his requests for protective custody, which prison administrators continued to deny. Baird also received an April 2013 letter from another Lawrence inmate, Stephen Couch, saying that legal documents intended for Baird and identifying him as a former undercover police officer had been misdirected to Couch. Couch noted that he did not like undercover cops and that some inmates might try to kill Baird if they found out about his past profession. But Couch promised to keep this information quiet, though he did request Baird's help with his own civil-rights suit.

Shortly after Baird was released from segregation into the general population, he filed his § 1983 action and the request for a preliminary injunction. The district court referred that motion to a magistrate judge who, after convening an evidentiary hearing, recommended that it be denied. The magistrate judge reasoned that ordering Baird's transfer to a different prison would be "overly broad and intrusive" and that the possibility of irreparable harm was too speculative even to warrant protective custody. The district court adopted the magistrate judge's recommendation over Baird's objections, adding that granting the motion "would effectively make protective custody status for inmates known by anyone to be former police officers a constitutional norm."

On appeal Baird maintains that the district court abused its discretion in denying a preliminary injunction. But to obtain relief, Baird was required to show that he would suffer irreparable harm during the pending lawsuit absent this extraordinary remedy, *see Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1086 (7th

Cir. 2008); *Ind. Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001), and he did not do so. Meeks is the only inmate at Lawrence who ever presented a threat to Baird, and he was separated from Baird after the attack and no longer is incarcerated at Lawrence. And though Couch did learn of Baird's past profession, he assured Baird in his letter that he "will never tell anyone" that Baird was a police officer. Moreover, Baird testified that because he and his cellmate (at the time of the evidentiary hearing) shared the same religion, he was "maybe out of harm's way being in that cell with him." Baird's contention that he is at risk of attack from any other of the more than 2,000 inmates at Lawrence, without more, was too speculative to warrant relief. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011); *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704–06 (7th Cir. 2005).

Because Baird did not show that he likely would suffer irreparable harm without preliminary relief, we need not address the remaining criteria for a preliminary injunction. *See Kiel v. City of Kenosha*, 236 F.3d 814, 817 (7th Cir. 2000); *Thornton v. Barnes*, 890 F.2d 1380, 1390 (7th Cir. 1989).

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. Baird's allegations are sufficient to demonstrate a likelihood of irreparable harm, and therefore I dissent from the decision to affirm the denial of the preliminary injunction. He has alleged that as a former police officer, he is part of an identifiable group of prisoners who are likely to be subjected to violence by other inmates, and he has also demonstrated that he individually has been singled out for such violence—both in the form of an actual attack and a threat of future violence. The majority errs in concluding that such allegations are insufficient to establish the likelihood of irreparable harm.

Baird has alleged that he was placed in a position of danger when inmates at his prior prison discovered that he was a former police officer, and that he was transferred to a different prison. Two inmates from that former prison were transferred to his current prison, and as a result inmates at his current prison have become aware of his former occupation. He has already been attacked once and received significant injuries including a broken nose, and he alleges that the attack occurred after the attacker discovered Baird's former occupation. He has also alleged that another inmate has written a letter to him revealing that the inmate is aware of Baird's former law enforcement occupation and noting that some inmates might try to kill him if they found out.

In order to succeed on his motion for a preliminary injunction, Baird must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm without the injunction, that the harm he would suffer is greater than the harm a preliminary injunction would inflict on the defendants, and that the injunction is in the public interest. *Bontrager v. Ind. Family & Social Servs. Admin.*, 697 F.3d 604, 607 (7th Cir. 2012); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In reviewing a district court's denial of a preliminary injunction, we review the court's legal conclusions de novo, its factual findings for clear error, and its balancing of the injunction factors for an abuse of discretion. *Bontrager*, 697 F.3d at 607. Here, the district court erred in its legal assessment as to whether Baird demonstrated irreparable harm. *See Davis v. Pension Benefits Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009).

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). In order to prevail on a claim under the Eighth Amendment that prison officials failed to protect him from a known risk of attack, a prisoner must show that the official's denial of his request for protective custody posed a substantial risk of

serious harm and the official acted with deliberate indifference to that risk. *Id.*; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference'" (quoting *Farmer*, 511 U.S. at 837)). If an official has enough information to know a specific threat exists to a particular inmate, or to an identifiable group of inmates with plaintiff's characteristics, injunctive relief is proper if that official ignores that threat. *Farmer*, 511 U.S. at 843. "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.*

That standard is met here. Baird has shown that he is part of an identifiable group—that of former police officers—to whom a specific threat of harm exists. That potential for harm is not an abstract one; he has already been attacked by one inmate who learned of his former occupation, and has received a letter from another inmate at the prison identifying Baird as a former officer and stating that some inmates may try to kill him if they found out. That should be enough to establish a specific threat to Baird. It is not necessary to show a specific threat from a specific inmate in order to establish an Eighth Amendment claim. The heightened risk can come from the victim's characteristics rather than the assailant's characteristics. *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). Here, there is direct evidence that his former occupation puts him at a substantial risk of serious harm, and that inmates at the institution are now aware of that former occupation. Although the district court held that Baird had shown that only three inmates knew he was a former police officer, that places an improper burden on Baird. Baird need not identify the specific inmate that may attack him in the future. *See Dale*, 548 F.3d at 569 ("A prison official 'cannot escape liability by showing that he did not know that a plaintiff was especially likely to be assaulted by the specific prisoner who eventually committed the assault.'"). He has demonstrated that multiple inmates at the institution have become aware of his former occupation, and there is no evidence of a connection between those inmates or any other basis to conclude that the knowledge was isolated to those specific inmates. It is enough to demonstrate that the information was known in the prison, and that Baird would not be able to contain the spread of the information and the resulting risk of harm.

There is no corresponding interest on the part of the prison in denying protective custody. In fact, Baird introduced evidence that the prison failed to follow its own policy which requires immediate protective custody for any inmate who seeks it. The district court rejected that argument, stating that state laws or institutional

procedures do not establish federal constitutional boundaries, but that misses the point. The existence of an institutional procedure to grant protective custody whenever requested by an inmate demonstrates that the preliminary injunction would inflict no harm on the prison, and that an injunction would be in the public interest. Essentially, Baird has demonstrated a significant risk of irreparable harm, and there is no corresponding harm to the prison in requiring it to follow a policy that it already has in place. For those reasons, the decision denying the preliminary injunction should be reversed.