NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2020[*]
Decided November 4, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*[**]

No. 19-2990

| | |
|---|---|
| MARK GIRTLER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 19-cv-358-bbc |
| BRADLEY FEDIE, *et al.*, *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

## O R D E R

While Mark Girtler was in segregation pending the investigation of an attack on him by another inmate, the district court denied his request for a preliminary injunction

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

[**] Circuit Judge Barrett was a member of the panel when this case was submitted but did not participate in the decision and judgment. The appeal is resolved by a quorum of the panel pursuant to 28 U.S.C. §46(d).

compelling his transfer to another prison. He filed this interlocutory appeal to contest that ruling. Given Girtler's assertion that officials had separated him from hostile inmates at the time of his request, the deference that courts owe prison officials, and the deference that we owe district courts in ruling on requests for injunctions, the district court reasonably denied the request. We thus affirm.

Girtler was a prisoner at the Wisconsin Secure Program Facility when he clashed with another inmate in 2019. In January, prison officials moved him from Unit D to Unit C over his protests that he "had enemies" there. On his arrival, Girtler told officers that he needed to be moved elsewhere because Charles Banister, a known gang leader housed in that unit, had threatened him for rebuffing an extortion attempt. He reported more threats over the next few days, but a lieutenant told him he would not be moved unless he filed a written request for separation. Girtler did not do so then, and three days later, Banister punched him at breakfast. Officials placed Girtler in segregation while they investigated the incident. They released him to Unit D, his original unit, after concluding that the clash was not his fault. In the meantime, Girtler says, Banister's gang had labeled him a snitch for revealing Banister as the culprit.

Although in Unit D he was separated from Banister, Girtler contends that he continued to receive threats from Banister's gang members, so he filed a written request for separation. In it he said he needed to be moved to different unit or prison because Banister and his gang were trying to extort him. Lieutenant Taylor then conducted an investigation to determine whether the request for separation should be granted. He concluded that there was no evidence in the incident reports that Girtler was targeted or that there is an existing threat to safety. Taylor further interviewed staff and confidential informants to assess the threat to Girtler, but could not interview specific individuals that were allegedly extorting Girtler because Girtler did not provide the names of those persons. Following the investigation, Taylor recommended denying the request. Security Director Mark Kartman then reviewed that recommendation, and agreed with it because the evidence did not provide any clear and convincing reason to believe that the alleged threats would be carried out. Girtler nonetheless remained separated from Banister: For reasons not in the record, he went to segregation for about six weeks and was later released to Unit C, while Banister moved to Unit D. But he still did not feel safe. He continued to report threats from inmates housed in both Units C and D and appealed the denial of his written separation request

This lawsuit and the request for a preliminary injunction came later. Girtler asked the court to order the defendants to transfer him to another prison because he

was in "imminent" danger from Banister. He later supplemented his request, attesting that in March 2019 a member of Banister's gang attacked him, that he was then placed in segregation, and that he will be returned to Unit C and remains in danger.

The district court denied his request for a preliminary injunction, holding that Girtler failed to demonstrate a likelihood of success or irreparable harm. Girtler's suit continued after this ruling. In successfully opposing the defendants' motion for summary judgment, Girtler asserted that since the denial he has left segregation, at times shared the same unit as Banister, received more threats, and again requested (but not received) a separation order. He has not renewed his request for a preliminary injunction with these assertions.

We begin our analysis by first discussing appellate jurisdiction. The defendants argue that we must dismiss Girtler's appeal because he failed to file a timely notice of appeal under Federal Rule of Appellate Procedure 3. Girtler initiated his appeal incorrectly, they say, by filing a document styled as a petition for permission to appeal under Rule 5 in this court. They believe that we recognized this error in a related appeal, docketed a month later when he filed a renewed petition for permission to appeal. *See* Order, *Girtler v. Fedie,* No. 19-8020 (7th Cir. Nov. 12, 2019). But they concede that, had Girtler cited Rule 3 instead of Rule 5, his filing would been timely, despite coming to this court instead of the district court, because his envelope reflects that he mailed it within 30 days of the ruling. FED. R. APP. P. 4(c), 4(d); *Saxon v. Lashbrook,* 873 F.3d 982, 986–87 (7th Cir. 2017).

Girtler's filing suffices as a notice of appeal. To function as a notice of appeal, a document need only (1) identify the party or parties taking the appeal, (2) designate the judgment or order appealed, and (3) name the court to which the appeal is taken. FED. R. APP. P. 3(c)(1); *see Smith v. Barry,* 502 U.S. 244, 248 (1992). Despite the harmless citation error, Girtler's filing contained all that and more. Further, in his related appeal, we explained that the second petition was "unnecessary because [he could] appeal the order denying his request for a preliminary injunction under 28 U.S.C. § 1292(a)(1)" without our permission, which we noted he was already doing. Order, *Girtler v. Fedie,* No. 19-8020 (7th Cir. Nov. 12, 2019). Our jurisdiction is thus secure.

On the merits, Girtler maintains that the district court improperly denied his request for a prison transfer. He emphasizes that he has already suffered two attacks at Banister's behest and that the defendants have denied his requests for separation. Therefore, he argues, he has demonstrated both a reasonable likelihood of success and a

possibility that he will suffer irreparable harm because he may again be housed with Banister or his affiliates and attacked unless he receives a transfer.

We review Girtler's appeal through a lens of double discretion. First, in addressing a request for an order regarding a prison assignment, federal courts must accord "wide-ranging deference" to the reasonable decisions that prison officials make regarding housing, internal order, and security. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979); *Godinez v. Lane,* 733 F.2d 1250, 1260 (7th Cir. 1984); *Shango v. Jurich,* 681 F.2d 1091, 1102 (7th Cir. 1982) (emphasizing that prison transfers are "the business of penologists and not the business of federal judges" (internal citations omitted)). Next, further deference is required in our review of a denial of a preliminary injunction. We review legal rulings de novo and factual findings for clear error. *Bontrager v. Ind. Family & Soc. Servs. Admin.,* 697 F.3d 604, 607 (7th Cir. 2012). But we review the district court's balancing of the competing factors favoring the opposing sides (including institutional operations and irreparable harm to Girtler) for abuse of discretion. *See id.*

With this dual deference in mind, we conclude that the district court permissibly denied Girtler's request for a preliminary injunction. We need only consider the first basis identified by the court, which is the failure to demonstrate a likelihood of success on the merits. To establish an Eighth Amendment violation based on a violation of the duty to protect prisoners from violence at the hands of others, a prisoner must show "that the prison official was deliberately indifferent to an excessive risk to the prisoner's health or safety, which includes both an objective and subjective component." *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020). The harm to which the prisoner was exposed must be objectively serious, and the prison official must have had actual knowledge of the risk. *Id*. Moreover, "[b]ecause a prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' prison officials who actually knew of a substantial risk to inmate health or safety can nevertheless escape liability if they responded reasonably to the risk, whether or not the harm was ultimately averted." *Id*. The district court in this case noted that Girtler's request for separation was investigated by Taylor and reviewed by Kartman, and that they "reasonably determined that there was insufficient evidence from which to conclude that the altercation between plaintiff and Banister rose to the level of requiring the separation of plaintiff and Banister." Dist. Ct. Order, Doc. 22, at 4-5. The court further held that "[t]here is no evidence that the investigation was a sham or was not based on legitimate security and administrative concerns." *Id*. at 5. That determination by the district court is supported in the record. Girtler's complaint of the risk of violence was not ignored by prison officials, but rather was investigated and both staff and confidential informants were interviewed prior to the denial of his

request for separation. Girtler's disagreement with the conclusions reached does not demonstrate that the prison officials were deliberately indifferent. As the district court noted, there is no evidence that the investigation was a sham or based on improper factors, and therefore no basis to conclude that the officials' response was not reasonable and constituted deliberate indifference. Nor is there a reason to believe that the process would be ineffective to address subsequent threats to Girtler. Because Girtler has failed to show a likelihood of success in demonstrating that the prison officials are acting with deliberate indifference, the court did not abuse its discretion in denying the request for a preliminary injunction.

Girtler remains free to renew his request for injunctive relief in the district court based on changes in his circumstances. For present purposes, however, given the deference applicable to his appeal and the record before the district court at the time of his request, the district court did not "exceed[] the bounds of permissible choice." *Roland Mach. Co. v. Dresser Indus.*, 749 F. 2d 380, 390 (7th Cir. 1984).

AFFIRMED